**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**STACEY ARNOLD YERKES**,

8506 Kacie Lane
Monclova, Ohio 43542

                    **PLAINTIFF**,

     v.

**OHIO STATE HIGHWAY PATROL**,

C/O David Yost
Ohio Attorney General
30 East Broad Street
Columbus, Ohio 43215

and,

**GENE SMITH**, *in both his official and
individual capacities*,

C/O David Yost
Ohio Attorney General
30 East Broad Street
Columbus, Ohio 43215

and,

**MICHAEL KEMMER**, *in both his official
and individual capacities*,

C/O David Yost
Ohio Attorney General
30 East Broad Street
Columbus, Ohio 43215

and,

**WILLIAM STIDHAM**, *in both his official
and individual capacities*,

C/O David Yost

CASE NO. 2:19-cv-2047

DISTRICT JUDGE

MAGISTRATE JUDGE

**COMPLAINT WITH JURY DEMAND**

Ohio Attorney General
30 East Broad Street
Columbus, Ohio 43215

and,

**SCOTT WYCKHOUSE**, *in both his official and individual capacities*,

C/O David Yost
Ohio Attorney General
30 East Broad Street
Columbus, Ohio 43215

**DEFENDANTS**.

## I.    NATURE OF THE CLAIMS

1.    This is a civil action by Plaintiff Stacey Arnold Yerkes against her former employer, the Ohio State Highway Patrol, and her former supervisors.  Defendants unlawfully terminated Ms. Arnold Yerkes's employment for one or more of the following reasons: (1) because of her sex; (2) because of her sexual orientation; and/or (3) because she engaged in the protected activity of opposing unlawful sex discrimination.

2.    Accordingly, Ms. Arnold Yerkes now files this civil action.  She seeks to recover for the harm she has suffered, to punish Defendants for their conduct, and to deter Defendants from ever perpetrating their conduct against any other person.

## II.    JURISDICTION AND VENUE

3.    Pursuant to 28 U.S.C. § 1331, this Court has original jurisdiction over Plaintiff's claims made under federal law because those claims constitute a civil action arising under the Constitution, laws, or treaties of the United States.

4.    Pursuant to Ohio Revised Code Sections 2307.381-.385, and the Due Process Clauses of the federal and Ohio Constitutions, this Court has personal jurisdiction over all

defendants because they are residents of, and have continuous and systematic contacts with, the State of Ohio.

5.      Pursuant to 28 U.S.C. § 1391, this Court is the appropriate venue because the Southern District of Ohio is the judicial district in which a substantial part of the events or omissions giving rise to the claims for relief occurred.

6.      Pursuant to Rule 82.1 of the Local Civil Rules of the United States District Court for the Southern District of Ohio, the Eastern Division at Columbus is the appropriate division because it serves the counties in which a substantial part of the events or omissions giving rise to the claims for relief occurred.

### III.    PARTIES

7.      Plaintiff Stacey Arnold Yerkes ("Plaintiff" or "Ms. Arnold Yerkes") is a natural person who is a resident of Ohio. Defendant Ohio State Highway Patrol employed Ms. Arnold Yerkes as a patrol officer for almost twenty-five years before it terminated her employment on or about February 12, 2018.

8.      Defendant Ohio State Highway Patrol ("Defendant OSHP") is a division within the Ohio Department of Public Safety, which is an agency of the State of Ohio. Defendant OSHP is headquartered at 1970 West Broad Street in Columbus, Ohio. Defendant OSHP is tasked with patrolling and providing safe roadways throughout the state.

9.      Defendant Gene Smith ("Defendant Smith") is a natural person who is a resident of Ohio. At all relevant times, Defendant Smith held the rank of Major in the Ohio State Highway Patrol and had supervisory authority over Ms. Arnold Yerkes. Defendant Smith was an individual responsible for, and/or who participated in, the adverse employment action(s) against Ms. Arnold Yerkes.

10.     Defendant Michael Kemmer ("Defendant Kemmer") is a natural person who is a resident of Ohio.  At all relevant times, Defendant Kemmer held the rank of Captain in the Ohio State Highway Patrol and had supervisory authority over Ms. Arnold Yerkes.   Defendant Kemmer was an individual responsible for, and/or who participated in, the adverse employment action(s) against Ms. Arnold Yerkes.

11.     Defendant William Stidham ("Defendant Stidham") is a natural person who is a resident of Ohio.  At all relevant times, Defendant Stidham held the rank of Staff Lieutenant in the Ohio State Highway Patrol and had supervisory authority over Ms. Arnold Yerkes. Defendant Stidham was an individual responsible for, and/or who participated in, the adverse employment action(s) against Ms. Arnold Yerkes.

12.     Defendant Scott Wyckhouse ("Defendant Wyckhouse") is a natural person who is a resident of Ohio.  At all relevant times, Defendant Wyckhouse held the rank of Lieutenant in the Ohio State Highway Patrol and had supervisory authority over Ms. Arnold Yerkes. Defendant Wyckhouse was an individual responsible for, and/or who participated in, the adverse employment action(s) against Ms. Arnold Yerkes.

### IV.     FACTS

#### A.     Plaintiff's Employment

13.     In February of 1994, Ms. Arnold Yerkes became employed by Defendant OSHP as a Cadet.  When she completed the training a few months later, she became a State Trooper.

14.     While Ms. Arnold Yerkes was working as a State Trooper, her annual performance reviews indicated that she met or exceeded expectations.

15.     In 1998, Defendant OSHP promoted Ms. Arnold Yerkes to the role of Criminal Interdiction Officer.   In this role, Ms. Arnold Yerkes was part of a specialized unit with a

4

competitive selection process. Criminal Interdiction Officers receive special training to identify potential criminal activity on our state's highways and to apprehend those responsible.

16. While Ms. Arnold Yerkes was working as a Criminal Interdiction Officer, her annual performance reviews indicated that she met or exceeded expectations.

17. In January of 2014, Defendant OSHP promoted Ms. Arnold Yerkes to Criminal Interdiction Training Sergeant. This was a special role created for Ms. Arnold Yerkes and Shaun Smart, her partner at work. In this role, Ms. Arnold Yerkes and Mr. Smart were tasked with representing the Ohio State Highway Patrol by training law enforcement officers in the State of Ohio and throughout the entire country on criminal interdiction. Ms. Arnold Yerkes and Mr. Smart were the highest-ranking instructors on criminal interdiction in the State of Ohio.

18. While Ms. Arnold Yerkes was working as a Criminal Interdiction Training Sergeant, her annual performance reviews indicated that she met or exceeded expectations.

19. While Plaintiff worked for Defendant OSHP, she received numerous awards for her job performance. Specific examples include, but are not limited to, the following:

    a. The 2016-2017 Criminal Interdiction Officer of Year awarded by the U.S. Department of Justice, U.S. Drug Enforcement Administration, U.S. Department of Transportation, and the U.S. Federal Motor Carrier Safety Administration. Criminal interdiction law enforcement officers throughout the country are eligible for this award. Former award winners nominate and choose new recipients each year. Ms. Arnold Yerkes was the first and only female officer to receive the award.

    b. Prior to receiving the 2016-2017 Criminal Interdiction Officer of the Year award, Ms. Arnold Yerkes was nominated for it twice. Ms. Arnold Yerkes was the first and only female nominee for the award.

c. 2011 Ohio State Highway Patrol State Trooper Recognition Award, which is considered the "State Trooper of the Year Award" for those assigned to specialty units like criminal interdiction.

d. 2010 National Criminal Enforcement Association Director's Award, in recognition of individual achievements in criminal interdiction. Ms. Arnold Yerkes was the first and only female to receive the award.

e. 2010 National Criminal Enforcement Association Robbie Bishop Award, in recognition of individual achievements in criminal interdiction. Ms. Arnold Yerkes was the first and only female to receive the award.

f. 2002 Ohio State Highway Patrol Criminal Patrol Award, in recognition of being responsible for initiating the most felony cases for 2002. Ms. Arnold Yerkes was the first and only female to receive the award.

g. 2002 Letter of Commendation from the Federal Bureau of Investigation, in recognition of apprehending a federal bank robber out of Austin, Texas.

h. Sixteen annual Ohio State Highway Patrol Criminal Patrol Recognition Awards, in recognition of initiating a minimum of five felony cases for the year.

20. When Ms. Arnold Yerkes took the examination necessary to be promoted to a sergeant, she achieved one of the highest test scores.

21. Just prior to her termination of employment, Ms. Arnold Yerkes had passed the examination necessary to be promoted to a sergeant, again achieving a very high score.

**B. Plaintiff's Sex and Sexual Orientation**

22. Ms. Arnold Yerkes is female.

23.     Ms. Arnold Yerkes does not conform to "traditional" gender stereotypes on how women should appear and dress.  For instance, she often cuts her hair short, is stocky and muscular, wears more masculine clothing, and wears minimal if any makeup or jewelry.

24.     Ms. Arnold Yerkes is gay.

25.     Defendants were all aware that Ms. Arnold Yerkes is gay.  At various points in her career with Defendant OSHP, she disclosed this fact to Defendants.

26.     In March of 2009, Ms. Arnold Yerkes had a civil union with her spouse Emily Yerkes in the State of Hawaii.

27.     In July of 2015 and following the Supreme Court's decision in *Obergefell v. Hodges*, 135 S.Ct. 2584 (2015), Ms. Arnold Yerkes finally married her spouse in Ohio.

28.     Defendants were all aware that Ms. Arnold Yerkes had a female spouse.  At various points in her career with Defendant OSHP, she disclosed this fact to Defendants.

### C.     The Discriminatory and Hostile Work Environment

29.     The work environment at the Ohio State Highway Patrol is hostile to women or to those who are gay.

30.     In 1994, on Ms. Arnold Yerkes's first day, her male heterosexual co-workers told her "[t]here has only been one other female here before you, so try not to screw it up and make females look bad."

31.     Ms. Arnold Yerkes's male heterosexual supervisors consistently created a discriminatory work environment based upon sex.  Specific examples include, but are not limited to, the following:

        a.      One of her male heterosexual supervisors once placed an envelope in her locker that contained a picture of the following: two naked women, embraced in a sexual

position, with one woman having a snake protruding from her vagina. Ms. Arnold Yerkes's supervisor later asked her, laughing, "did you get our envelope?"

b. One of her male heterosexual supervisors inquired about her sex life. He once asked about a party Ms. Arnold Yerkes had attended with friends. He asked Ms. Arnold Yerkes if she had gone to a "back room" to "have sex together" with her female friends. Embarrassed, Ms. Arnold Yerkes adamantly replied, "no." Her supervisor then proceeded to ask her if she wore any underwear.

c. One of Ms. Arnold Yerkes's supervisors once told her to move her "fat ass out of the way." This supervisor never spoke to men in this derogatory manner.

32. During the time Ms. Arnold Yerkes worked with them, Defendant Kemmer, Defendant Stidham, Defendant Wyckhouse, and/or other supervisors consistently made sexist comments about women. Specific examples include, but are not limited to, the following:

a. They called women, among other things, "cunt," "fucking cunt," "bitch," "fucking bitch," and "broad."

b. They commented that "women are only promoted here because they are women, not because of merit."

c. They commented that "the only reason women are allowed to perform lower than men is because they are women."

d. They commented on the physical appearance of women in a derogatory manner by calling them names such as "fat bitch." They did not do the same for men.

33. Defendant Kemmer, Defendant Stidham, Defendant Wyckhouse, and/or other supervisors consistently made sexist, gender stereotyping, and/or homophobic comments about Ms. Arnold Yerkes. Specific examples include, but are not limited to, the following:

8

a. When Ms. Arnold Yerkes came to work with her hair cut short, they commented that Ms. Arnold Yerkes's hair "looks stupid" and she "looks butch."

b. On one occasion, when Ms. Arnold Yerkes wore make-up and earrings to work, they commented "what, is she trying to be a girl now?"

c. They commented that Ms. Arnold Yerkes was "emotional" and that "women are like that" and "bring that with them to the workplace."

d. Ms. Arnold Yerkes requested leave under the Family and Medical Leave Act (FMLA) for the birth her and her wife's son. She was denied this leave and was told "it's not the same" as those who are heterosexual. Ms. Arnold Yerkes filed a grievance under her labor contract, but it was denied.

**D.    The Discrimination Leading to Plaintiff's Termination of Employment**

34.    Beginning in April of 2017, and shortly after Ms. Arnold Yerkes lost her grievance over FMLA leave for the birth of her son, Defendants started aggressively criticizing Ms. Arnold Yerkes's job performance. These criticisms had no merit and Defendants were treating Ms. Arnold Yerkes more harshly than comparable males and more harshly than comparable heterosexuals. Specific examples include, but are not limited to, the following:

a. Defendants criticized Ms. Arnold Yerkes for leaving her patrol vehicle running and unattended in the parking lot of a patrol post. Male heterosexual patrol officers frequently left their patrol vehicles running and unattended and they were not criticized or disciplined. For instance, Tommy Vaculik, a male heterosexual, left his patrol vehicle running and unattended in the parking lot of a patrol post. In addition, Willie Richardson, a male heterosexual, left his patrol vehicle running and unattended in the parking lot of a patrol post. Finally, Ryan Stewart, a male heterosexual, left his patrol

9

vehicle running and unattended in the parking lot of a patrol post.  None of them were criticized or disciplined for this conduct.

b.      Defendants criticized Ms. Arnold Yerkes for not wearing her hat during a traffic stop and told her that "some see that as a felony."  Male heterosexual patrol officers have failed to wear their hats while working and were not criticized or disciplined.  For instance, Defendant Wyckhouse, a male heterosexual, failed to wear his hat during a drug seizure.

c.      Defendants reprimanded Ms. Arnold Yerkes for arriving at her assigned patrol post at 8:01a.m. instead of 8:00a.m.  Male heterosexual patrol officers often did the same, or worse, and were not criticized or disciplined.  For instance, Brian Holden, a male heterosexual, arrived at his assigned patrol post at 8:26a.m. one day instead of 8:00a.m.  He was not criticized or disciplined.  Defendant Stidham, a male heterosexual, arrived at his assigned patrol post at 8:12a.m. one day instead of 8:00a.m.

d.      Defendants reprimanded Ms. Arnold Yerkes for wearing civilian attire in a marked patrol vehicle while driving to the Ohio State Highway Patrol's Women's Leadership Conference (WLC).  Male heterosexual patrol officers did the same and were not criticized or disciplined.  For instance, Kurt Beidelschies and David Smith, two male heterosexuals, and their male heterosexual co-workers wore civilian attire in their marked patrol vehicles when they attended the Ohio State Highway Patrol's Hispanic Leadership Conference.  None of these male heterosexuals who had engaged in this conduct had been criticized or disciplined.  When told by Ms. Arnold Yerkes that Defendants were going to discipline her for engaging in this conduct, both Mr. Beidelschies and Mr. Smith said that was "bullshit."

10

      e.      Defendants reprimanded Ms. Arnold Yerkes allegedly for leaving her shift early.  Male heterosexual patrol officers often left work before their shift had ended and were not criticized or disciplined.  This included Defendant Kemmer, Defendant Stidham, and other male heterosexual employees of Defendant OSHP.

      f.      Defendants reprimanded Ms. Arnold Yerkes for being unable to testify at a court case even though she was on approved sick leave at the time.  Male heterosexual patrol officers have missed testifying at court cases and were not criticized or disciplined.  For instance, Nicholas Conrad and William Clay, two male heterosexuals, missed testifying at court cases.  They were not criticized or disciplined.

35.     Defendants also made vague subjective criticisms of Ms. Arnold Yerkes.  These criticisms had no merit.  Specific examples include, but are not limited to, the following:

      a.      Defendants criticized her for "having a lot going on at home," which apparently referred to her young child with her spouse.

      b.      Defendants criticized her for allegedly having a "bad attitude."

      c.      Defendants criticized her as allegedly not being "supervisor material."

      d.      Defendants criticized her by stating she "better get along and be a team member."

**E.      Plaintiff's Internal Complaint and Charge of Discrimination**

36.     On December 6, 2017, Ms. Arnold Yerkes complained to her direct supervisor Nathan Dickerson.  She told him that Defendant Kemmer, Defendant Stidham, and Defendant Wyckhouse were discriminating against her because of her sex and her sexual orientation.  She asked for his help.  Mr. Dickerson then informed his supervisors.  Defendant OSHP refused to take any action and did not even investigate the internal complaint.

37.     On January 29, 2018, Ms. Arnold Yerkes completed the intake questionnaire to file a charge of discrimination with the Equal Employment Opportunity Commission (EEOC). She alleged sex discrimination based upon gender, gender stereotypes, and sexual orientation.

38.     Ms. Arnold Yerkes immediately told her direct supervisor, Nathan Dickerson, that she had filed a charge of discrimination with the EEOC.  Ms. Arnold Yerkes also told her workplace partner Shaun Smart.

### F.     Plaintiff's Termination of Employment

39.     On February 2, 2018, Defendant Kemmer required Ms. Arnold Yerkes to attend a meeting with himself, her supervisor Nathan Dickerson, and a staff lieutenant Brent Hunter. During this meeting, Defendant Kemmer accused Ms. Arnold Yerkes of allegedly violating a policy regarding tattoos.  He ordered Ms. Arnold Yerkes remove an approved "medical sleeve" that she wore and show him the tattoo that was underneath.  Ms. Arnold Yerkes refused, stating she had done nothing wrong.  Defendant Kemmer then stated he would be disciplining Ms. Arnold Yerkes for "insubordination."

40.     This criticism by Defendant Kemmer was meritless.  The policy regarding tattoos only requires Ms. Arnold Yerkes to not have a tattoo visible when she is wearing uniforms or clothing approved for use by Defendant OSHP.  Ms. Arnold Yerkes never violated this policy. Her tattoo underneath her medical sleeve was never visible at any time when she was wearing approved uniforms or clothing.

41.     Defendants also treated Ms. Arnold Yerkes differently than her male or heterosexual counterparts.  They have tattoos.  Defendants never demanded to see their tattoos, nor did Defendants criticize or discipline them.   For instance, Nicholas Malo, a male heterosexual state trooper, has a tattoo and has not been criticized or disciplined.

42.     On February 5, 2018, Defendants placed Ms. Arnold Yerkes on administrative leave.

43.     On February 9, 2018, Defendants told Ms. Arnold Yerkes she was being scheduled for a pre-disciplinary hearing with a recommendation that her employment be terminated.

44.     The ultimate decision-maker on Ms. Arnold Yerkes's termination was Defendant Smith.  He was aware of the disparate treatment.

45.     On February 9, 2018, Defendants offered Ms. Arnold Yerkes a last chance agreement (LCA) through her union.  Ms. Arnold Yerkes was told she had to accept the LCA or her employment would be terminated.  The terms of the LCA were onerous and unrealistic.  For instance, the terms included requiring Ms. Arnold Yerkes to remove her tattoo from her body even though it did not violate the policy regarding tattoos.

46.     Notably, the LCA also explicitly required Ms. Arnold Yerkes to withdraw the charge she filed with the EEOC or else she would be fired.  Other LCAs that Defendants have used with employees did not require them to withdraw an EEOC charge.

47.     On February 12, 2018, knowing she would be fired since she would not sign the LCA and give up her discrimination claims under federal law, Ms. Arnold Yerkes chose to retire and avoid the adverse consequences of a termination of her employment.  If Ms. Arnold Yerkes had not chosen to retire, Defendants would have terminated her employment.

### G.     Plaintiff Supplements Her Charge of Discrimination

48.     Ms. Arnold Yerkes went back to the EEOC.  She told the EEOC investigator what had happened since she first filed an EEOC charge.

49.     Ms. Arnold Yerkes supplemented her charge of discrimination with the EEOC to include wrongful termination claims and to include retaliation claims.

50.     A true and accurate copy of the supplemented EEOC charge of discrimination is attached as Exhibit 1 to this Complaint.

## H.     The Right-To-Sue Letter

51.     The EEOC subsequently investigated the charge of discrimination.

52.     On March 4, 2019, the EEOC issued a "Dismissal and Notice of Rights" letter to Ms. Arnold Yerkes for her charge of discrimination (the "Right-to-Sue Letter").

53.     A true and accurate copy of the Right-to-Sue Letter is attached as Exhibit 2 to this Complaint.

## V.     CLAIMS FOR RELIEF

## COUNT I

## Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq. (Sex Discrimination – Termination of Employment)

## Against Defendant OSHP

54.     All preceding paragraphs are incorporated by reference as if fully restated in this paragraph.

55.     Plaintiff was at all relevant times an "employee" within the meaning of 42 U.S.C. § 2000e(f).

56.     Defendant OSHP was at all relevant times an "employer" within the meaning of 42 U.S.C. § 2000e(b).

57.     Defendant OSHP violated 42 U.S.C. § 2000e-2(a) when it terminated Plaintiff's employment because of her sex.  Alternatively, Plaintiff's sex was a motivating factor in the decision by Defendant OSHP to terminate Plaintiff's employment.

14

58.     As a proximate result of Defendant OSHP's actions, Plaintiff has been and continues to be damaged in an amount to be determined at trial.

59.     Consistent with 42 U.S.C. § 1981a, Plaintiff is entitled to punitive damages because Defendant OSHP engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to Plaintiff's federally protected rights.

60.     Consistent with 42 U.S.C. § 2000e-5(k), Plaintiff is entitled to reasonable attorneys' fees incurred in pursuing Count I.

## COUNT II

**Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq.
(Sex Discrimination – Gender Stereotypes – Termination of Employment)**

**Against Defendant OSHP**

61.     All preceding paragraphs are incorporated by reference as if fully restated in this paragraph.

62.     Plaintiff was at all relevant times an "employee" within the meaning of 42 U.S.C. § 2000e(f).

63.     Defendant OSHP was at all relevant times an "employer" within the meaning of 42 U.S.C. § 2000e(b).

64.     Defendant OSHP violated 42 U.S.C. § 2000e-2(a) when it terminated Plaintiff's employment because of gender stereotypes.  Alternatively, the gender stereotypes about Plaintiff were a motivating factor in the decision by Defendant OSHP to terminate Plaintiff's employment.

65.     As a proximate result of Defendant OSHP's actions, Plaintiff has been and continues to be damaged in an amount to be determined at trial.

66.     Consistent with 42 U.S.C. § 1981a, Plaintiff is entitled to punitive damages because Defendant OSHP engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to Plaintiff's federally protected rights.

67.     Consistent with 42 U.S.C. § 2000e-5(k), Plaintiff is entitled to reasonable attorneys' fees incurred in pursuing Count II.

### COUNT III

**Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq.**
**(Sex Discrimination – Sexual Orientation – Termination of Employment)**

**Against Defendant OSHP**

68.     All preceding paragraphs are incorporated by reference as if fully restated in this paragraph.

69.     Plaintiff was at all relevant times an "employee" within the meaning of 42 U.S.C. § 2000e(f).

70.     Defendant OSHP was at all relevant times an "employer" within the meaning of 42 U.S.C. § 2000e(b).

71.     Defendant OSHP violated 42 U.S.C. § 2000e-2(a) when it terminated Plaintiff's employment because of her sexual orientation.  Alternatively, Plaintiff's sexual orientation was a motivating factor in the decision by Defendant OSHP to terminate Plaintiff's employment.

72.     As a proximate result of Defendant OSHP's actions, Plaintiff has been and continues to be damaged in an amount to be determined at trial.

73.     Consistent with 42 U.S.C. § 1981a, Plaintiff is entitled to punitive damages because Defendant OSHP engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to Plaintiff's federally protected rights.

74.     Consistent with 42 U.S.C. § 2000e-5(k), Plaintiff is entitled to reasonable attorneys' fees incurred in pursuing Count III.

## COUNT IV

**Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq.**
**(Retaliation – Termination of Employment)**

### Against Defendant OSHP

75.     All preceding paragraphs are incorporated by reference as if fully restated in this paragraph.

76.     Plaintiff was at all relevant times an "employee" within the meaning of 42 U.S.C. § 2000e(f).

77.     Defendant OSHP was at all relevant times an "employer" within the meaning of 42 U.S.C. § 2000e(b).

78.     Plaintiff engaged in the activity protected by 42 U.S.C. § 2000e-3.

79.     Defendant OSHP violated 42 U.S.C. § 2000e-3 when it terminated Plaintiff's employment because Plaintiff engaged in protected activity.

80.     As a proximate result of Defendant OSHP's actions, Plaintiff has been and continues to be damaged in an amount to be determined at trial.

81.     Consistent with 42 U.S.C. § 1981a, Plaintiff is entitled to punitive damages because Defendant OSHP engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to Plaintiff's federally protected rights.

82.     Consistent with 42 U.S.C. § 2000e-5(k), Plaintiff is entitled to reasonable attorneys' fees incurred in pursuing Count IV.

**COUNT V**

**Violation of the Civil Rights Act of 1871, 42 U.S.C. § 1983**
**Equal Protection Clause of the Fourteenth Amendment to the United States Constitution**
**(Sex Discrimination – Termination of Employment)**

**Against Defendants Smith, Kemmer, Stidham, and Wyckhouse**

83.    All preceding paragraphs are incorporated by reference as if fully restated in this paragraph.

84.    Plaintiff was at all relevant times a "citizen of the United States or other person within the jurisdiction thereof" within the meaning of 42 U.S.C. § 1983.

85.    Defendants Kemmer, Stidham, and Wyckhouse were, at all relevant times, "person[s]" within the meaning of 42 U.S.C. § 1983 because they are sued for prospective injunctive relief in their official capacities and for money damages in their individual capacities.

86.    Defendants Kemmer, Stidham, and Wyckhouse acted under color of a statute, ordinance, regulation, custom, or usage of the State of Ohio and deprived Plaintiff of her rights, privileges, or immunities secured by the federal Constitution or federal law when they terminated her employment because of her sex.  Alternatively, Plaintiff's sex was a motivating factor in their decision to terminate her employment.

87.    As a proximate result of Defendants Kemmer, Stidham, and Wyckhouse's actions, Plaintiff has been and continues to be damaged in an amount to be determined at trial.

88.    Plaintiff is entitled to punitive damages because Defendants Kemmer, Stidham, and Wyckhouse were motivated by evil motive or intent or acted with reckless or callous indifference to Plaintiff's federally protected rights.

89.    Consistent with 42 U.S.C. § 1988, Plaintiff is entitled to reasonable attorneys' fees incurred in pursuing Count V.

**COUNT VI**

**Violation of the Civil Rights Act of 1871, 42 U.S.C. § 1983**
**Equal Protection Clause of the Fourteenth Amendment to the United States Constitution**
**(Sex Discrimination – Sexual Orientation – Termination of Employment)**

**Against Defendants Smith, Kemmer, Stidham, and Wyckhouse**

90.    All preceding paragraphs are incorporated by reference as if fully restated in this paragraph.

91.    Plaintiff was at all relevant times a "citizen of the United States or other person within the jurisdiction thereof" within the meaning of 42 U.S.C. § 1983.

92.    Defendants Kemmer, Stidham, and Wyckhouse were, at all relevant times, "person[s]" within the meaning of 42 U.S.C. § 1983 because they are sued for prospective injunctive relief in their official capacities and for money damages in their individual capacities.

93.    Defendants Kemmer, Stidham, and Wyckhouse acted under color of a statute, ordinance, regulation, custom, or usage of the State of Ohio and deprived Plaintiff of her rights, privileges, or immunities secured by the federal Constitution or federal law when they terminated her employment because of her sexual orientation.  Alternatively, Plaintiff's sexual orientation was a motivating factor in their decision to terminate her employment.

94.    As a proximate result of Defendants Kemmer, Stidham, and Wyckhouse's actions, Plaintiff has been and continues to be damaged in an amount to be determined at trial.

95.    Plaintiff is entitled to punitive damages because Defendants Kemmer, Stidham, and Wyckhouse were motivated by evil motive or intent or acted with reckless or callous indifference to Plaintiff's federally protected rights.

96.    Consistent with 42 U.S.C. § 1988, Plaintiff is entitled to reasonable attorneys' fees incurred in pursuing Count VI.

## VI.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests judgment in her favor on all claims in this Complaint and requests the following relief:

A.    Economic compensatory damages in an amount to be determined at trial;

B.    Non-economic compensatory damages in an amount to be determined at trial;

C.    Liquidated, treble, punitive, or other exemplary damages in an amount to be determined at trial;

D.    Reinstatement or, in the alternative, front pay in an amount to be determined;

E.    Reasonable attorneys' fees incurred in pursuing the claims against Defendants;

F.    All costs and expenses incurred in pursuing the claims against Defendants;

G.    Pre- and post-judgment interest; and

H.    All other legal and equitable relief this Court and/or a jury determines is appropriate.

## VII.    JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a trial by jury on all claims and issues that are triable.

Respectfully submitted,

By:  /s/ Jason E. Starling
Jason E. Starling (Ohio Bar No. 0082619)
WILLIS SPANGLER STARLING
4635 Trueman Boulevard, Suite 200
Hilliard, Ohio 43026
Telephone: (614) 586-7915
Facsimile: (614) 586-7901
jstarling@willisattorneys.com

John C. Camillus (Ohio Bar No. 0077435), Trial Attorney
LAW OFFICES OF JOHN C. CAMILLUS, LLC
P.O. Box 141410
Columbus, Ohio 43214

Telephone: (614) 558-7254
Facsimile: (614) 559-6731
jcamillus@camilluslaw.com

*Attorneys for Plaintiff Stacey Arnold Yerkes*