**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **STACEY ARNOLD YERKES,** | : | |
| **Plaintiff,** | : | **CASE NO. 2:19-CV-02047** |
| **v.** | : | **JUDGE EDMUND A. SARGUS** |
| **OHIO STATE HIGHWAY PATROL,** | : | **MAGISTRATE JUDGE** |
| *et al.,* | | **ELIZABETH PRESTON DEAVERS** |
| **Defendants.** | : | |

**DEFENDANT OHIO STATE HIGHWAY PATROL'S**
**ANSWER TO PLAINTIFF'S COMPLAINT**

NOW COMES Defendant Ohio State Highway Patrol ("Defendant" or "OSHP") by and through counsel, and files the within Answer to Plaintiff's Complaint.[1] For the Court's convenience, Plaintiff's allegations are set forth verbatim with OSHP's response immediately following.

**"I. NATURE OF THE CLAIMS"**

1. This is a civil action by Plaintiff Stacey Arnold Yerkes against her former employer, the Ohio State Highway Patrol and her former supervisors. Defendants unlawfully terminated Ms. Arnold Yerkes's employment for one or more of the following reasons: (1) because of her sex; (2) because of her sexual orientation; and/or (3) because she engaged in the protected activity of opposing unlawful sex discrimination.

**ANSWER:** As to ¶ 1 of the Complaint, Defendant admits that Plaintiff is a former employee of the Ohio State Highway Patrol. Defendant denies all remaining allegations in ¶ 1 of Plaintiff's Complaint.

2. Accordingly, Ms. Arnold Yerkes now files this civil action. She seeks to recover

---

[1] Concurrently with this Answer, the individually-named Defendants, Gene Smith, Michael Kemmer, William Stidham, and Scott Wyckhouse are filing a Motion to Dismiss all of Plaintiff's claims asserted against each of them.

for the harm she has suffered, to punish Defendants for their conduct, and to deter Defendants from ever perpetrating their conduct against any other person.

**ANSWER:** As to ¶ 2 of the Complaint, Defendant admits that Plaintiff filed this lawsuit in which she seeks relief but denies that Plaintiff is entitled to any of the relief she seeks or to any relief whatsoever. Defendant denies any remaining allegations in ¶ 2 of Plaintiff's Complaint.

## "II. JURISDICTION AND VENUE"

3. Pursuant to 28 U.S.C. § 1331, this Court has original jurisdiction over Plaintiff's claims made under federal law because those claims constitute a civil action arising under the Constitution, laws, or treaties of the United States.

**ANSWER:** As to ¶ 3 of the Complaint, Defendant avers the referenced statute speaks for itself. Defendant admits that Plaintiff seeks to invoke the jurisdiction of this Court under 28 U.S.C. § 1331, but denies that Plaintiff is entitled to any of the relief she seeks or to any relief whatsoever.

4. Pursuant to Ohio Revised Code Sections 2307.381-.385, and the Due Process Clauses of the federal and Ohio Constitutions, this Court has personal jurisdiction over all defendants because they are residents of, and have continuous and systematic contacts with, the State of Ohio.

**ANSWER:** As to ¶ 4 of the Complaint, Defendant avers the referenced statutes speak for themselves and further that the allegations call for legal conclusions. Defendant admits that Plaintiff claims that this Court has personal jurisdiction over Defendant but denies that Plaintiff is entitled to any relief.

5. Pursuant to 28 U.S.C. § 1391, this Court is the appropriate venue because the

Southern District of Ohio is the judicial district in which a substantial part of the events or omissions giving rise to the claims for relief occurred.

> **ANSWER:** As to ¶ 5 of the Complaint, Defendant admits that venue in the Southern District of Ohio is proper, but denies that Plaintiff is entitled to any relief.

6. Pursuant to Rule 82.1 of the Local Rules of the United States District Court for the Southern District of Ohio, the Eastern District at Columbus is the appropriate division because it serves the counties in which a substantial part of the events or omissions giving rise to the claims for relief occurred.

> **ANSWER:** As to ¶ 6, of the Complaint, Defendant admits that venue in the Southern District of Ohio is proper, but denies that Plaintiff is entitled to any of the relief she seeks or any relief whatsoever. Defendant denies all remaining allegations in ¶ 6 of Plaintiff's Complaint.

## "III. PARTIES"

7. Plaintiff Stacey Arnold Yerkes ("Plaintiff" or "Ms. Arnold Yerkes") is a natural person who is a resident of Ohio. Defendant Ohio State Highway Patrol employed Ms. Arnold Yerkes as a patrol officer for almost twenty-five years before it terminated her employment or on about February 12, 2018.

> **ANSWER:** As to ¶ 7 of the Complaint, Defendant denies for lack of knowledge Plaintiff's citizenship status or residence. Defendant admits that Plaintiff worked for OSHP as a patrol officer. Defendant denies the remaining allegations in ¶ 7 of Plaintiff's Complaint.

8. Defendant Ohio State Highway Patrol ("Defendant OSHP") is a division within the Ohio State Department of Public Safety, which is an agency of the State of Ohio. Defendant

OSHP is headquartered at 1970 West Broad Street in Columbus, Ohio. Defendant OSHP is tasked with patrolling and providing safe roadways throughout the state.

> **ANSWER:** As to ¶ 8 of the Complaint, Defendant admits that OSHP is a state agency as defined by Ohio Revised Code 121.02(D). Defendant admits that OSHP is responsible for patrolling and providing safe roadways throughout the state. Defendant admits that it is headquartered at 1970 West Broad Street in Columbus, Ohio. Defendant denies the remaining allegations in ¶ 8 of Plaintiff's Complaint.

9. Defendant Gene Smith ("Defendant Smith") is a natural person who is a resident of the state of Ohio. At all relevant times, Defendant Smith held the rank of Major in the Ohio State Highway Patrol and had supervisory authority over Ms. Arnold Yerkes. Defendant Smith was an individual responsible for, and/or who participated in, the adverse employment action(s) against Ms. Arnold Yerkes.

> **ANSWER:** As to ¶ 9 of the Complaint, Defendant admits that Defendant Smith is a natural person who is a resident of Ohio. Defendant further admits that as of April 5, 2017, Defendant Smith held the rank of Major in the Ohio State Highway Patrol. Defendant further admits that Defendant Smith was at times a supervisor within Plaintiff's chain of command but specifically denies that he was Plaintiff's direct supervisor. Defendant denies all remaining allegations contained in ¶ 9 of Plaintiff's Complaint.

10. Defendant Michael Kemmer ("Defendant Kemmer") is a natural person who is a resident of Ohio. At all relevant times, Defendant Kemmer held the rank of Captain in the Ohio State Highway Patrol and had supervisory authority over Ms. Arnold Yerkes. Defendant Kemmer was an individual responsible for, and/or who participated in, the adverse employment

action(s) against Ms. Arnold Yerkes.

**ANSWER:** As to ¶ 10 of the Complaint, Defendant admits that Defendant Kemmer is a natural person who is a resident of Ohio. Defendant further admits that as of October 16, 2017, Defendant Kemmer held the rank of Captain in the Ohio State Highway Patrol. Defendant further admits that Defendant Kemmer was at times a supervisor within Plaintiff's chain of command but specifically denies that he was Plaintiff's direct supervisor. Defendant denies all remaining allegations contained in ¶ 10 of Plaintiff's Complaint.

11. Defendant William Stidhman ("Defendant Stidham") is a natural person who is a resident of Ohio. At all relevant times, Defendant Stidham held the rank of Staff Lieutenant in the Ohio State Highway Patrol and had supervisory authority over Ms. Arnold Yerkes. Defendant Stidham was an individual responsible for, and/or who participated in, the adverse employment action(s) against Ms. Arnold Yerkes.

**ANSWER:** As to ¶ 11 of the Complaint, Defendant admits that Defendant Stidham is a natural person who is a resident of Ohio. Defendant further admits that as of February 5, 2015, Defendant Stidham held the rank of Staff Lieutenant in the Ohio State Highway Patrol. Defendant further admits that Defendant Stidham was at times a supervisor within Plaintiff's chain of command but specifically denies that he was Plaintiff's direct supervisor. Defendant denies all remaining allegations contained in ¶ 11 of Plaintiff's Complaint.

12. Defendant Scott Wyckhouse ("Defendant Wyckhouse") is a natural person who is a resident of Ohio. At all relevant times, Defendant Wyckhouse held the rank of Lieutenant in the Ohio State Highway Patrol and had supervisory authority over Ms. Arnold Yerkes.

Defendant Wyckhouse was an individual responsible for, and/or who participated in, the adverse employment action(s) against Ms. Arnold Yerkes.

 **ANSWER:** As to ¶ 12 of the Complaint, Defendant admits that Defendant Wyckhouse is a natural person who is a resident of Ohio. Defendant further admits that as of February 5, 2015 Defendant Wyckhouse held the rank of Lieutenant in the Ohio State Highway Patrol. Defendant further admits that Defendant Wyckhouse was at times a supervisor within Plaintiff's chain of command but specifically denies that he was Plaintiff's direct supervisor. Defendant denies all remaining allegations contained in ¶ 11 of Plaintiff's Complaint.

## "IV. FACTS

### A. Plaintiff's Employment"

13. In February of 1994, Ms. Arnold Yerkes became employed by Defendant OSHP as a Cadet. When she completed the training a few months later, she became a State Trooper.

 **ANSWER:** As to ¶ 13 of the Complaint, Defendant admits the allegations contained therein.

14. While Ms. Arnold Yerkes was working as a State Trooper, her annual performance reviews indicated that she met or exceeded expectations.

 **ANSWER:** As to ¶ 14 of the Complaint, Defendant states that Plaintiff's performance reviews are written documents that speak for themselves, and no response is required. Defendant denies all remaining allegations in ¶ 14 of Plaintiff's Complaint.

15. In 1998, Defendant OSHP promoted Ms. Arnold Yerkes to the role of Criminal Interdiction Officer. In this role, Ms. Arnold Yerkes was part of a specialized unit with a competitive selection process. Criminal Interdiction Officers receive special training to identify

potential criminal activity on our state's highways and to apprehend those responsible.

**ANSWER:** As to ¶ 15 of the Complaint, Defendant admits that Plaintiff served in the Criminal Interdiction unit. Defendant denies all remaining allegations contained in ¶ 15 of the Complaint.

16. While Ms. Arnold Yerkes was working as a Criminal Interdiction Officer, her annual performance reviews indicated that she met or exceeded expectations.

**ANSWER:** As to ¶ 16 of the Complaint, Defendant states that Plaintiff's performance reviews are written documents that speak for themselves, and no response is required. Defendant denies all remaining allegations in ¶ 16 of Plaintiff's Complaint.

17. In January of 2014, Defendant OSHP promoted Ms. Arnold Yerkes to Criminal Interdiction Training Sergeant. This was a special role created for Ms. Arnold Yerkes and Shaun Smart, her partner at work. In this role, Ms. Arnold Yerkes and Mr. Smart were tasked with representing the Ohio State Highway Patrol by training law enforcement officers in the State of Ohio and throughout the entire country on criminal interdiction. Ms. Arnold Yerkes and Mr. Smart were the highest-ranking instructors on criminal interdiction in the State of Ohio.

**ANSWER:** As to ¶ 17 of the Complaint, Defendant avers that Plaintiff and Mr. Smart trained law enforcement officers on criminal interdiction tactics. Defendant denies the remaining allegations contained in ¶ 17 of the Complaint.

18. While Ms. Arnold Yerkes was working as a Criminal Interdiction Training Sergeant, her annual performance reviews indicated that she met or exceeded expectations.

**ANSWER:** As to ¶ 18 of the Complaint, Defendant states that Plaintiff's performance reviews are written documents that speak for themselves, and no response is required. Defendant denies all remaining allegations in ¶ 18 of Plaintiff's Complaint.

19.    While Plaintiff worked for Defendant OSHP, she received numerous awards for her job performance.  Specific examples include, but are not limited to, the following:

a.    The 2016-2017 Criminal Interdiction Officer of the Year awarded by the U.S. Department of Justice, U.S. Drug Enforcement, U.S. Department of Transportation, and the U.S. Federal Motor Carrier Safety Administration.  Criminal interdiction law enforcement officers throughout the country are eligible for this award.  Former award winners nominate and choose new recipients each year.  Ms. Arnold Yerkes was the first and only female officer to receive the award.

b.    Prior to receiving the 2016-2017 Criminal Interdiction Officer of the Year award, Ms. Arnold Yerkes was nominated for it twice.  Ms. Arnold Yerkes was the first and only female nominee for this award.

c.    2011 Ohio State Highway Patrol State Trooper Recognition Award, which is considered the "State Trooper of the Year Award" for those assigned to specialty units like criminal interdiction.

d.    2010 National Criminal Enforcement Association Director's Award, in recognition of individual achievements in criminal interdiction.  Ms. Arnold Yerkes was the first and only female to receive the award.

e.    2010 National Criminal Enforcement Association Robbie Bishop Award, in recognition of individual achievements in criminal interdiction.  Ms. Arnold Yerkes was the first and only female to receive the award.

f.    2002 Ohio State Highway Patrol Criminal Patrol Award, in recognition of being responsible for initiating the most felony cases for 2002.  Ms. Arnold Yerkes was the first and only female to receive the award.

g.     2002 Letter of Commendation from the Federal Bureau of Investigation, in recognition of apprehending a federal bank robber out of Austin, Texas.

h.     Sixteen annual Ohio State Highway Patrol Criminal Patrol Recognitions Awards, in recognition of initiating a minimum of five felony cases for the year.

**ANSWER:** As to ¶ 19 of the Complaint, Defendant states that Plaintiff received various awards and commendations during her employment with Defendant, which awards and commendations are expressed as written documents that speak for themselves, and no response is required.  Defendant denies all remaining allegations in ¶ 19 of Plaintiff's Complaint.

20.     When Ms. Arnold Yerkes took the examination necessary to be promoted to a sergeant, she achieved one of the highest test scores.

**ANSWER:** As to ¶ 20 of the Complaint, Defendant states that Plaintiff's performance on the sergeant examination is expressed in a written document that speaks for itself, and no response is required.  Defendant denies for lack of knowledge all remaining allegations in ¶ 20 of Plaintiff's Complaint.

21.     Just prior to her termination of employment, Ms. Arnold Yerkes had passed the examination necessary to be promoted to a sergeant, again achieving a very high score.

**ANSWER:** As to ¶ 21 of the Complaint, Defendant states that Plaintiff's performance on the sergeant examination is expressed in a written document that speaks for itself, and no response is required.  Defendant denies for lack of knowledge all remaining allegations in ¶ 21 of Plaintiff's Complaint.

**B.  Plaintiff's Sex and Sexual Orientation**

22.     Ms. Arnold Yerkes is female.

**ANSWER:**     As to ¶ 22 of the Complaint, Defendant states that Ms. Yerkes self-

identifies as female.

23.    Ms. Arnold Yerkes does not conform to "traditional" gender stereotypes on how women should appear and dress.  For instance, she often cuts her hair short, is stocky and muscular, wears more masculine clothing, and wears minimal if any makeup or jewelry.

**ANSWER:**    As to ¶ 23 of the Complaint, Defendant denies for lack of knowledge the allegations contained therein.

24.    Ms. Arnold Yerkes is gay.

**ANSWER:**    As to ¶ 24 of the Complaint, Defendant states that Plaintiff self-identifies as gay.

25.    Defendants were all aware that Ms. Arnold Yerkes is gay.  At various points in her career with Defendant OSHP, she disclosed this fact to Defendants.

**ANSWER:**    As to ¶ 25 of the Complaint, Defendant denies for lack of knowledge the allegations contained therein.

26.    In March of 2009, Ms. Arnold Yerkes had a civil union with her spouse Emily Yerkes in the State of Hawaii.

**ANSWER:**    As to ¶ 26 of the Complaint, Defendant denies for lack of knowledge the allegations contained therein.

27.    In July of 2015 and following the Supreme Court's decision in *Obergefell v. Hodges*, 135 S.Ct. 2585 (2015), Ms. Arnold Yerkes finally married her spouse in Ohio.

**ANSWER:**    As to ¶ 27 of the Complaint, Defendant states that upon information and belief, Plaintiff married her spouse on July 13, 2015.  Answering further, Defendant denies for lack of knowledge the remaining allegations set forth in ¶ 27 of Plaintiff's Complaint.

28.     Defendants were all aware that Ms. Arnold Yerkes had a female spouse.   At various points in her career with Defendant OSHP, she disclosed this fact to Defendants.

**ANSWER:**     As to ¶ 28 of the Complaint, Defendant denies for lack of knowledge the allegations contained therein.

### "C.     The Discriminatory and Hostile Work Environment"

29.     The work environment at the Ohio State Highway Patrol is hostile to women or to those who are gay.

**ANSWER:**     As to ¶ 29 of the Complaint, Defendant denies the allegations contained therein.

30.     In 1994, on Ms. Arnold Yerkes's first day, her male heterosexual co-workers told her "[t]here has only been one other female here before you, so try not to screw it up and make females look bad."

**ANSWER:**     As to ¶ 30 of the Complaint, Defendant denies for lack of knowledge the allegations contained therein.

31.     Ms. Arnold Yerkes's male heterosexual supervisors consistently created a discriminatory work environment based upon sex.  Specific examples include, but are not limited to, the following:

a.      One of her male heterosexual supervisors once placed an envelope in her locker that contained a picture of the following: two naked women, embraced in a sexual position, with one woman having a snake protruding from her vagina.  Ms. Arnold Yerkes's supervisor later asked her, laughing, "did you get our envelope?"

b.      One of her male heterosexuals inquired about her sex life.  He once asked about a party Ms. Arnold Yerkes had attended with friends.  He asked Ms. Arnold Yerkes if she had

gone to a "back room" to "have sex together" with her female friends. Embarrassed, Ms. Arnold Yerkes adamantly replied, "no." Her supervisor then proceeded to ask her if she wore any underwear.

c.      One of Ms. Arnold Yerkes's supervisors once told her to move her "fat ass out of the way." This supervisor never spoke to men in this derogatory manner.

**ANSWER:**    As to ¶ 31 of the Complaint, Defendant denies the allegations contained in ¶31 of Plaintiff's Complaint.

32.     During the time Ms. Arnold Yerkes worked with them, Defendant Kemmer, Defendant Stidham, Defendant Wyckhouse, and/or other supervisors consistently made sexist comments about women. Specific examples include, but are not limited to, the following:

a.      They called women, among other things, "cunt," "fucking cunt," "bitch," "fucking bitch," and "broad."

b.     They commented that "women are only promoted here because they are women, not because of merit."

c.      They commented that "the only reason women are allowed to perform lower than men is because they are women."

d.      They commented on the physical appearance of women in a derogatory manner by calling them names such as "fat bitch." They did not do the same for men.

**ANSWER:**    As to ¶ 32 of the Complaint, Defendant denies the allegations contained therein.

33.     Defendant Kemmer, Defendant Stidham, Defendants Wyckhouse, and/or other supervisors consistently made sexist, gender stereotyping, and/or homophobic comments about Ms. Arnold Yerkes. Specific examples include, but are not limited to, the following:

a.    When Ms. Arnold Yerkes came to work with her hair cut short, they commented that Ms. Arnold Yerkes's hair "looks stupid" and she "looks butch."

b.     On one occasion, when Ms. Arnold Yerkes wore make-up and earrings to work, they commented "what, is she trying to be a girl now?"

c.    They commented that Ms. Arnold Yerkes was "emotional" and that "women are like that" and "bring that with them to the workplace."

d.    Ms. Arnold Yerkes requested leave under the Family and Medical Leave Act (FMLA) for the birth [sic] her and her wife's son.  She was denied this leave and was told "it's not the same" as those who are heterosexual.  Ms. Arnold Yerkes filed a grievance under her labor contract, but it was denied.

**ANSWER:**  As to ¶ 33 of the Complaint, Defendant states that to the extent that Plaintiff refers to written documents, Plaintiff's request for Family and Medical Leave Act leave is expressed in written documents that speak for themselves, and no response is required. Defendant denies the remaining allegations contained in ¶ 33 of Plaintiff's Complaint.

**"D.    The Discrimination Leading to Plaintiff's Termination of Employment"**

34.    Beginning in April of 2017, and shortly after Ms. Arnold Yerkes lost her grievance over FMLA leave for the birth of her son, Defendants started aggressively criticizing Ms. Arnold Yerkes's job performance.  These criticisms had no merit and Defendants were treating Ms. Arnold Yerkes more harshly than comparable males and more harshly than comparable heterosexuals.  Specific examples include, but are not limited to, the following:

a.    Defendants criticized Ms. Arnold Yerkes for leaving her patrol vehicle running and unattended in the parking lot of a patrol post.  Male heterosexual patrol officers frequently left their patrol vehicles running and unattended and they were not criticized or disciplined.  For

instance, Tommy Vaculik, a male heterosexual, left his patrol vehicle running and unattended in the parking lot of a patrol post. In addition, Willie Richardson, a male heterosexual, left his patrol vehicle running and unattended in the parking lot of a patrol post. Finally, Ryan Stewart, a male heterosexual, left his patrol vehicle running and unattended in the parking lot of a patrol post. None of them were criticized or disciplined for this conduct.

b.      Defendants criticized Ms. Arnold Yerkes for not wearing her hat during a traffic stop and told her that "some see that as a felony." Male heterosexual patrol officers have failed to wear their hats while working and were not criticized or disciplined. For instance, Defendant Wyckhouse, a male heterosexual, failed to wear his hat during a drug seizure.

c.      Defendants reprimanded Ms. Arnold Yerkes for arriving at her assigned patrol post at 8:01 a.m. instead of 8:00 a.m. Male heterosexual patrol officers often did the same, or worse, and were not criticized or disciplined. For instance, Brian Holden, a male heterosexual, arrived at his assigned patrol post at 8:26 a.m. one day instead of 8:00 a.m. He was not criticized or disciplined. Defendant Stidham, a male heterosexual, arrived at his assigned patrol post at 8:12 a.m. one day instead of 8:00 a.m.

d.      Defendants reprimanded Ms. Arnold Yerkes for wearing civilian attire in a marked patrol vehicle while driving to the Ohio State Highway Patrol's Women Leadership Conference (WLC). Male heterosexual patrol officers did the same and were not criticized or disciplined. For instance, Kurt Beidelschies and David Smith, two male heterosexual co-workers wore civilian attire in their marked patrol vehicles when they attended the Ohio State Highway Patrol's Hispanic Leadership Conference. None of these male heterosexuals who had engaged in this conduct had been criticized or disciplined. When told by Ms. Arnold Yerkes that Defendants were going to discipline her for engaging in this conduct, both Mr. Beidelschies and

Mr. Smith said that was "bullshit."

     e.     Defendants reprimanded Ms. Arnold Yerkes allegedly for leaving her shift early. Male heterosexual patrol officers often left work before their shift had ended and were not criticized or disciplined. This included Defendant Kemmer, Defendant Stidham and other male heterosexual employees of Defendant OSHP.

     f.     Defendants reprimanded Ms. Arnold Yerkes for being unable to testify at a court case even though she was on approved sick leave at the time. Male heterosexual patrol officers have missed testifying at court cases and were not criticized or disciplined. For instance, Nicholas Conrad and William Clay, two male heterosexuals, missed testifying at court cases. They were not criticized or disciplined.

     **ANSWER:** Defendant avers that at various times, Plaintiff was given corrective counseling and reprimands due to her failure to follow OSHP policies and procedures, and that such corrective counseling and reprimands were issued consistent with OSHP policies and procedures and without regard to Plaintiff's sex or any other impermissible reason. Stating further, Defendant avers that it enforces its policies and procedures even-handedly irrespective of race, gender or sexual orientation, or any other impermissible reason.

     In response to section (a) of ¶ 34 of Plaintiff's Complaint, Defendant denies that Plaintiff was disciplined for leaving her patrol vehicle running and unattended in the parking lot of a patrol post. Defendant admits that canine handlers employed by the Defendant, such as Trooper Ryan Stewart, at times are permitted by policy to leave their patrol vehicle running while it is parked for the safety of a service animal in the vehicle. Defendant denies for lack of knowledge as to whether Tommy Vaculik and/or Willie Richardson ever left their patrol vehicles running and unattended in the parking lot of a patrol post. Defendant denies the

remaining allegations contained in section (a) of ¶ 34 of Plaintiff's Complaint.

In response to section (b) of ¶ 34 of Plaintiff's Complaint Defendant denies that Plaintiff was disciplined for not wearing her hat during a traffic stop. Stating further, Defendant states that Patrol troopers and officers are permitted to remove their state-issued hats while conducting searches in a way that conforms to policy. Defendant denies all remaining allegations contained in section (b) of ¶ 34 of Plaintiff's Complaint.

In response to section (c) of ¶ 34 of Plaintiff's Complaint, Defendant denies that Plaintiff was reprimanded for arriving at her patrol post at 8:01 a.m. instead of 8:00 a.m. Stating further, Defendant states that different officers of the Patrol, such as a Lieutenant or Staff Lieutenant can respond at times to calls during their off hours and may report to work later or leave work earlier as a result. Defendant denies any allegations contained in (c) of ¶ 34 of Plaintiff's Complaint not specifically admitted herein.

In response to section (d) of ¶ 34 of Plaintiff's Complaint, Defendant denies that Plaintiff was reprimanded for wearing civilian attire in a marked patrol vehicle while driving to the Ohio State Highway Patrol's Women's Leadership Conference. Defendant denies for lack of knowledge the remaining allegations contained in section (d) of ¶ 34 of Plaintiff's Complaint.

In response to section (e) of ¶ 34 of Plaintiff's Complaint, Defendant denies that Plaintiff was disciplined for leaving her shift early. Defendant states further that Defendant Kemmer and Defendant Stidham have been permitted to leave their shifts early, particularly after working an on-call shift and to compensate for extra time worked. Defendant further states that as a Captain and a Staff Lieutenant, Defendants Kemmer and Stidham were subject to different attendance policies than Plaintiff was. Stating further, Defendant avers that Defendants Kemmer and Stidham were responsible for responding to calls during their off

hours. Defendant denies all remaining allegations contained in section (e) of ¶ 34 of Plaintiff's Complaint.

In response to section (f) of ¶ 34 of Plaintiff's Complaint, Defendant states that on October 10, 2017, Plaintiff failed to appear in Perrysburg Municipal Court for a driving under suspension case she had been subpoenaed for. Defendant avers that on January 9, 2018, Plaintiff was issued a written reprimand. Defendant denies all remaining allegations contained in section (f) of ¶ 34 of Plaintiff's Complaint.

Defendant denies all remaining allegations contained in ¶ 34 of Plaintiff's Complaint.

35.     Defendants also made vague subjective criticism of Ms. Arnold Yerkes. These criticisms had no merit. Specific examples include, but are not limited to, the following:

a.      Defendants criticized her for "having a lot going on at home," which apparently referred to her young child with her spouse.

b.      Defendants criticized her for allegedly having a "bad attitude"

c.      Defendants criticized her as allegedly "not being supervisor material."

d.      Defendants criticized her by stating she "better get along and be a team member."

**ANSWER:**     As to ¶ 35 of the Complaint, Defendant denies the allegations contained therein.

**"E.     Plaintiff's Internal Complaint and Charge of Discrimination"**

36.     On December 6, 2017, Ms. Arnold Yerkes complained to her direct supervisor Nathan Dickerson. She told him that Defendant Kemmer, Defendant Stidham and Defendant Wyckhouse were discriminating against her because of her sex and her sexual orientation. She asked for his help. Mr. Dickerson then informed his supervisors. Defendant OSHP refused to take any action and did not even investigate the internal complaint.

**ANSWER:** As to ¶ 36 of the Complaint, Defendant denies for lack of knowledge the allegation relating a conversation between Plaintiff and Nathan Dickerson. Defendant denies all remaining allegations contained in ¶ 36 of Plaintiff's Complaint.

37. On January 29, 2018, Ms. Arnold Yerkes completed the intake questionnaire to file a charge of discrimination with the Equal Employment Opportunity Commission (EEOC). She alleged sex discrimination based upon gender, gender stereotypes, and sexual orientation.

**ANSWER:** As to ¶ 37 of the Complaint, Defendant denies for lack of knowledge the allegations contained therein, and further states that the intake questionnaire is a written document that speaks for itself.

38. Ms. Arnold Yerkes immediately told her direct supervisor, Nathan Dickerson, that she had filed a charge of discrimination with the EEOC. Ms. Arnold Yerkes also told her workplace partner Shaun Smart.

**ANSWER:** As to ¶ 38 of the Complaint, Defendant denies for lack of knowledge the allegations contained therein.

### "F. Plaintiff's Termination of Employment"

39. On February 2, 2018, Defendant Kemmer required Ms. Arnold Yerkes to attend a meeting with himself, her supervisor Nathan Dickerson, and a staff lieutenant Brent Hunter. During this meeting, Defendant Kemmer accused Ms. Arnold Yerkes of allegedly violating a policy regarding tattoos. He ordered Ms. Arnold Yerkes [sic] remove an approved "medical sleeve" that she wore and show him the tattoo that was underneath. Ms. Arnold Yerkes refused, stating she had done nothing wrong. Defendant Kemmer then stated he would be disciplining Ms. Arnold Yerkes for "insubordination."

**ANSWER:** As to ¶ 39 of the Complaint, Defendant admits that on February 2, 2018,

having been informed that Plaintiff had a tattoo on her forearm and was attempting to conceal the tattoo in violation of OSHP policy, Defendant Kemmer requested a meeting with Plaintiff and requested to see her forearm. When she refused, Defendant Kemmer presented Plaintiff with a written order directing her to show him her forearm, and Plaintiff again refused. Defendant denies all remaining allegations contained in ¶ 39 of Plaintiff's Complaint.

40.     This criticism by Defendant Kemmer was meritless. The policy regarding tattoos only requires Ms. Arnold Yerkes to not have a tattoo visible when she is wearing uniforms or clothing approved for use by Defendant OSHP. Ms. Arnold Yerkes never violated this policy. Her tattoo underneath her medical sleeve was never visible at any time when she was wearing approved uniforms or clothing.

**ANSWER:** As to ¶ 40 of the Complaint, Defendant denies the allegations contained therein. The allegations were investigated by the Defendant's Office of Personnel (See attached, Exhibit A, Administrative Investigation File #2018-00077, Bates-stamped pages "DEFENDANT 000001 – 000042").

41.     Defendants also treated Ms. Arnold Yerkes differently than her male heterosexual counterparts. They have tattoos. Defendants never demanded to see their tattoos, nor did Defendants criticize or discipline them. For instance, Nicholas Malo, a male heterosexual state trooper, has a tattoo and has not been criticized or disciplined.

**ANSWER:** As to ¶ 41 of the Complaint, Defendant denies the allegations contained therein.

42.     On February 5, 2018, Defendant placed Ms. Arnold Yerkes on administrative leave.

**ANSWER:** As to ¶ 42 of the Complaint, Defendant admits the allegation contained therein.

43. On February 9, 2018, Defendants told Ms. Arnold Yerkes she was being scheduled for a pre-disciplinary hearing with a recommendation that her employment be terminated.

**ANSWER:** As to ¶ 43 of the Complaint, Defendant states that Plaintiff was informed in writing, addressed to her and her union representatives, that she was scheduled for a pre-disciplinary hearing. (See Ex. A, OSHP Administrative Investigation #2018-0077, "DEFENDANT 000037 – 000038." Defendant denies any allegations not specifically admitted herein.

44. The ultimate decision-maker on Ms. Arnold Yerkes's termination was Defendant Smith. He was aware of the disparate treatment.

**ANSWER:** As to ¶ 44 of the Complaint, Defendant denies the allegations contained therein.

45. On February 9, 2018, Defendants offered Ms. Arnold Yerkes a last chance agreement (LCA) through her union. Ms. Arnold Yerkes was told she had to accept the LCA or her employment would be terminated. The terms of the LCA were onerous and unrealistic. For instance, the terms included requiring Ms. Arnold Yerkes to remove her tattoo from her body even though it did not violate the policy regarding tattoos.

**ANSWER:** As to ¶ 45 of the Complaint, Defendant admits that it offered Plaintiff a Last Chance Agreement ("LCA") through her union. Defendant states that the LCA is a written document that speaks for itself. Defendant denies all remaining allegations contained in ¶ 45 of Plaintiff's Complaint.

46.     Notably, the LCA also explicitly required Ms. Arnold Yerkes to withdraw the charge she filed with the EEOC or else she would be fired.  Other LCAs that Defendants have used with employees did not require them to withdraw an EEOC charge.

**ANSWER:**     As to ¶ 46 of the Complaint, Defendant states that the LCA is a written document that speaks for itself.  Defendant denies all remaining allegations contained in ¶46 of Plaintiff's Complaint.

47.     On February 12, 2018, knowing she would be fired since she would not sign the LCA and give up her discrimination claims under federal law, Ms. Arnold Yerkes chose to retire and avoid the adverse consequences of a termination of her employment.  If Ms. Arnold Yerkes had not chosen to retire, Defendants would have terminated her employment.

**ANSWER:**     As to ¶ 47 of the Complaint, Defendant admits that on February 12, 2018, Plaintiff voluntarily retired from her employment with OSHP.  Defendant denies all remaining allegations contained in ¶ 47 of the Complaint.

### "G. Plaintiff Supplements Her Charge of Discrimination"

48.     Ms. Arnold Yerkes went back to the EEOC.  She told the EEOC investigator what had happened since she first filed an EEOC charge.

**ANSWER:**     As to ¶ 48 of the Complaint, Defendant denies for lack of knowledge the allegations contained therein.

49.     Ms. Arnold Yerkes supplemented her charge of discrimination with the EEOC to include wrongful termination claims and to include retaliation claims.

**ANSWER:**     As to ¶ 49 of the Complaint, Defendant denies for lack of knowledge the allegations contained therein.

50.     A true and accurate copy of the supplemental EEOC charge of discrimination is

attached as Exhibit 1 to this Complaint.

**ANSWER:**  As to ¶ 50 of the Complaint, to the extent a document denominated as "Exhibit 1" is attached to the Complaint, Defendant states that the document speaks for itself.  Defendant otherwise denies for lack of knowledge the allegations contained therein.

### "H. The Right-to-Sue Letter"

51.  The EEOC subsequently investigated the charge of discrimination.

**ANSWER:**  As to ¶ 51 of the Complaint, Defendant denies for lack of knowledge the allegations contained therein.

52.  On March 4, 2019, the EEOC issued a "Dismissal and Notice of Rights" letter to Ms. Arnold Yerkes for her charge of discrimination (the "Right-to-Sue Letter")

**ANSWER:**  As to ¶ 52 of the Complaint, Defendant admits that a "Dismissal and Notice of Rights" is attached to the Complaint and that such document speaks for itself. Answering further, Defendant denies for lack of knowledge the remaining allegations contained in ¶ 52 of the Complaint.

53.  A true and accurate copy of the Right-to-Sue Letter is attached as Exhibit 2 to this Complaint.

**ANSWER:**  As to ¶ 53 of the Complaint, Defendant admits that a "Dismissal and Notice of Rights" is attached to the Complaint and that such document speaks for itself. Answering further, Defendant denies for lack of knowledge the remaining allegations contained in ¶ 53 of the Complaint.

### "V. CLAIMS FOR RELIEF

### COUNT I

**Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e, et seq.**
**(Sex Discrimination – Termination of Employment)**
**Against Defendant OSHP"**

54.     All preceding paragraphs are incorporated by reference as if fully restated in this paragraph.

**ANSWER:**     As to ¶ 54 of the Complaint, Defendant reincorporates its answers to ¶¶ 1 through 53 as if fully rewritten herein.

55.     Plaintiff was at all relevant times an "employee" within the meaning of 42 U.S.C. §2000e(f).

**ANSWER:**     As to ¶ 55 of the Complaint, Defendant avers that ¶ 55 of Plaintiff's Complaint is a legal conclusion to which no response is required.

56.     Defendant OSHP was at all relevant times an "employer" within the meaning of 42 U.S.C. §2000e(b).

**ANSWER:**     As to ¶ 56 of the Complaint, Defendant states that the allegation contained therein is a legal conclusion and no response is required.

57.     Defendant OSHP violated 42 U.S.C. §2000e-2(a) when it terminated Plaintiff's employment because of her sex.  Alternatively, Plaintiff's sex was a motivating factor in the decision by Defendant OSHP to terminate Plaintiff's employment.

**ANSWER:**     As to ¶ 57 of the Complaint, Defendant denies the allegations contained therein.

58.     As a proximate result of Defendant OSHP's actions, Plaintiff has been and continues to be damaged in an amount to be determined at trial.

**ANSWER:**     As to ¶ 58 of the Complaint, Defendant denies the allegations contained therein, and states that Plaintiff is not entitled to any of the relief she seeks or to any relief

whatsoever.

59. Consistent with 42 U.S.C. § 1981a, Plaintiff is entitled to punitive damages because Defendant OSHP engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to Plaintiff's federally protected rights.

**ANSWER:** As to ¶ 59 of the Complaint, Defendant denies the allegations contained therein, and states that Plaintiff is not entitled to any of the relief she seeks or to any relief whatsoever.

60. Consistent with 42 U.S.C. §2000e-5(k), Plaintiff is entitled to reasonable attorneys' fees incurred in pursuing Count I.

**ANSWER:** As to ¶ 60 of the Complaint, Defendant denies the allegations contained therein, and states that Plaintiff is not entitled to any of the relief she seeks or to any relief whatsoever.

## "COUNT II

### Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e, et seq.
### (Sex Discrimination – Gender Stereotypes – Termination of Employment)

### Against Defendant OSHP"

61. All preceding paragraphs are incorporated by reference as if fully restated in this paragraph.

**ANSWER:** As to ¶ 61 of the Complaint, Defendant reincorporates its answers to ¶¶ 1 through 60 as if fully rewritten herein.

62. Plaintiff was at all relevant times an "employee" within the meaning of 42 U.S.C. §2000e(f).

**ANSWER:** As to ¶ 62 of the Complaint, Defendant states that the allegation contained

therein is a legal conclusion and no response is required.

63.    Defendant OSHP was at all relevant times an "employer" within the meaning of 42 U.S.C. §2000e(b).

**ANSWER:**    As to ¶ 63 of the Complaint, Defendant states that the allegation contained therein is a legal conclusion and no response is required.

64.    Defendant OSHP violated 42 U.S.C. §2000e-2(a) when it terminated Plaintiff's employment because of gender stereotypes.  Alternatively, the gender stereotypes about Plaintiff were a motivating factor in the decision by Defendant OSHP to terminate Plaintiff's employment.

**ANSWER:**    As to ¶ 64 of the Complaint, Defendant denies the allegations contained therein.

65.    As a proximate result of Defendant OSHP's actions, Plaintiff has been and continues to be damaged in an amount to be determined at trial.

**ANSWER:**    As to ¶ 65 of the Complaint, Defendant denies the allegations contained therein, and states that Plaintiff is not entitled to any of the relief she seeks or to any relief whatsoever.

66.    Consistent with 42 U.S.C. § 1981a, Plaintiff is entitled to punitive damages because Defendant OSHP engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to Plaintiff's federally protected rights.

**ANSWER:**    As to ¶ 66 of the Complaint, Defendant denies the allegations contained therein, and states that Plaintiff is not entitled to any of the relief she seeks or to any relief whatsoever.

67.    Consistent with 42 U.S.C. §2000e-5(k), Plaintiff is entitled to reasonable

attorneys' fees incurred in pursuing Count II.

**ANSWER:** As to ¶ 67 of the Complaint, Defendant denies the allegations contained therein, and states that Plaintiff is not entitled to any of the relief she seeks or to any relief whatsoever.

**"COUNT III**

**Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e, et seq.**
**(Sex Discrimination – Sexual Orientation – Termination of Employment)**

**Against Defendant OSHP"**

68.     All preceding paragraphs are incorporated by reference as if fully restated in this paragraph.

**ANSWER:** As to ¶ 68 of the Complaint, Defendant reincorporates its answers to Paragraphs 1 through 67 as if fully rewritten herein.

69.     Plaintiff was at all relevant times an "employee" within the meaning of 42 U.S.C. §2000e(f).

**ANSWER:** As to ¶ 69 of the Complaint, Defendant states that the allegation contained therein is a legal conclusion and no response is required.

70.     Defendant OSHP was at all relevant times an "employer" within the meaning of 42 U.S.C. §2000e(b).

**ANSWER:** As to ¶ 70 of the Complaint, Defendant states that the allegation contained therein is a legal conclusion and no response is required.

71.     Defendant OSHP violated 42 U.S.C. §2000e-2(a) when it terminated Plaintiff's employment because of her sexual orientation.  Alternatively, Plaintiff's sexual orientation was a motivating factor in the decision by Defendant OSHP to terminate Plaintiff's employment.

**ANSWER:** As to ¶ 71 of the Complaint, Defendant denies the allegations contained therein.

72. As a proximate result of Defendant OSHP's actions, Plaintiff has been and continues to be damaged in an amount to be determined at trial.

**ANSWER:** As to ¶ 72 of the Complaint, Defendant denies the allegations contained therein, and states that Plaintiff is not entitled to any of the relief she seeks or to any relief whatsoever.

73. Consistent with 42 U.S.C. § 1981a, Plaintiff is entitled to punitive damages because Defendant OSHP engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to Plaintiff's federally protected rights.

**ANSWER:** As to ¶ 73 of the Complaint, Defendant denies the allegations contained therein, and states that Plaintiff is not entitled to any of the relief she seeks or to any relief whatsoever.

74. Consistent with 42 U.S.C. §2000e-5(k), Plaintiff is entitled to reasonable attorneys' fees incurred in pursuing Count III.

**ANSWER:** As to ¶ 74 of the Complaint, Defendant denies the allegations contained therein, and states that Plaintiff is not entitled to any of the relief she seeks or to any relief whatsoever.

### "COUNT IV

**Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e, et seq.
(Retaliation - Termination of Employment)**

**Against Defendant OSHP"**

75. All preceding paragraphs are incorporated by reference as if fully restated in this

paragraph.

**ANSWER:** As to ¶ 75 of the Complaint, Defendant reincorporates its answers to ¶¶ 1 through 74 as if fully rewritten herein.

76. Plaintiff was at all relevant times an "employee" within the meaning of 42 U.S.C. §2000e(f).

**ANSWER:** As to ¶ 76 of the Complaint, Defendant states that the allegation contained therein is a legal conclusion and no response is required.

77. Defendant OSHP was at all relevant times an "employer" within the meaning of 42 U.S.C. §2000e(b).

**ANSWER:** As to ¶ 77 of the Complaint, Defendant states that the allegation contained therein is a legal conclusion and no response is required.

78. Plaintiff engaged in activity protected by 42 U.S.C. § 2000e-3.

**ANSWER:** As to ¶ 78 of the Complaint, Defendant denies the allegations contained therein.

79. Defendant OSHP violated 42 U.S.C. §2000e-3 when it terminated Plaintiff's employment because Plaintiff engaged in protected activity.

**ANSWER:** As to ¶ 79 of the Complaint, Defendant denies the allegations contained therein.

80. As a proximate result of Defendant OSHP's actions, Plaintiff has been and continues to be damaged in an amount to be determined at trial.

**ANSWER:** As to ¶ 80 of the Complaint, Defendant denies the allegations contained therein, and states that Plaintiff is not entitled to any of the relief she seeks or to any relief whatsoever.

81. Consistent with 42 U.S.C. §1981a, Plaintiff is entitled to punitive damages because Defendant OSHP engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to Plaintiff's federally protected rights.

**ANSWER**: As to ¶ 81 of the Complaint, Defendant denies the allegations contained therein, and states that Plaintiff is not entitled to any of the relief she seeks or to any relief whatsoever.

82. Consistent with 42 U.S.C. § 2000e-5(k), Plaintiff is entitled to reasonable attorneys' fees incurred in pursuing Count IV.

**ANSWER:** As to ¶ 82 of the Complaint, Defendant denies the allegations contained therein, and states that Plaintiff is not entitled to any of the relief she seeks or to any relief whatsoever.

## COUNT V

**Violation of the Civil Rights Act of 1871, 42 U.S.C. § 1983**
**Equal Protection Clause of the Fourteenth Amendment to the United States Constitution**
**(Sex Discrimination – Termination of Employment)**

**Against Defendants Smith, Kemmer, Stidham, and Wyckhouse**

83. All preceding paragraphs are incorporated by reference as if fully restated in this paragraph.

**ANSWER:** As to ¶ 83 of the Complaint, Defendant reincorporates its answers to ¶¶ 1 through 82 as if fully rewritten herein.

84. Plaintiff was at all relevant times a "citizen of the United States or other person within the jurisdiction thereof" within the meaning of 42 U.S.C. § 1983.

**ANSWER:** As to ¶ 84 of the Complaint, Defendant states that the allegation contained therein is a legal conclusion and no response is required.

85. Defendants Kemmer, Stidham, and Wyckhouse were, at all relevant times, "person[s]" within the meaning of 42 U.S.C. § 1983 because they are sued for prospective injunctive relief in their official capacities and for money damages in their individual capacities.

**ANSWER:** As to ¶ 85 of the Complaint, Defendant states that the allegation contained therein is a legal conclusion and no response is required.

86. Defendants Kemmer, Stidham, and Wyckhouse acted under color of statute, ordinance, regulation, custom, or usage of the State of Ohio and deprived Plaintiff of her rights, privileges, or immunities secured by the federal Constitution or federal law when they terminated her employment because of her sex. Alternatively, Plaintiff's sex was a motivating factor in their decision to terminate her employment.

**ANSWER:** As to ¶ 86 of the Complaint, Defendant denies the allegations contained therein.

87. As a proximate result of Defendants Kemmer, Stidham, and Wyckhouse's actions, Plaintiff has been and continues to be damaged in an amount to be determined at trial.

**ANSWER:** As to ¶ 87 of the Complaint, Defendant denies the allegations contained therein, and states that Plaintiff is not entitled to any of the relief she seeks or to any relief whatsoever.

88. Plaintiff is entitled to punitive damages because Defendants Kemmer, Stidham, and Wyckhouse were motivated by evil motive or intent or acted with reckless or callous indifference to Plaintiff's federally protected rights.

**ANSWER:** As to ¶ 88 of the Complaint, Defendant denies the allegations contained therein, and states that Plaintiff is not entitled to any of the relief she seeks or to any relief whatsoever.

89.    Consistent with 42 U.S.C. § 1988, Plaintiff is entitled to reasonable attorneys' fees incurred in pursuing Count V.

**ANSWER:**    As to ¶ 89 of the Complaint, Defendant denies the allegations contained therein, and states that Plaintiff is not entitled to any of the relief she seeks or to any relief whatsoever.

### COUNT VI

**Violation of the Civil Rights Act of 1871, 42 U.S.C. § 1983**
**Equal Protection Clause of the Fourteenth Amendment to the United States**
**Constitution**
**(Sex Discrimination – Sexual Orientation – Termination of Employment)**

Against Defendants Smith, Kemmer, Stidham, and Wyckhouse

90.    All preceding paragraphs are incorporated by reference as if fully restated in this paragraph.

**ANSWER**: As to ¶ 90 of the Complaint, Defendant reincorporates its answers to ¶¶ 1 through 89 as if fully rewritten herein.

91.    Plaintiff was at all relevant times a "citizen of the United States or other person within the jurisdiction thereof" within the meaning of 42 U.S.C. § 1983.

**ANSWER**:    As to ¶ 91 of the Complaint, Defendant states that the allegation contained therein is a legal conclusion and no response is required.

92.    Defendants Kemmer, Stidham, and Wyckhouse were, at all relevant times, "person[s]" within the meaning of 42 U.S.C. § 1983 because they are sued for prospective injunctive relief in their official capacities and for money damages in their individual capacities.

**ANSWER:**    As to ¶ 92 of the Complaint, Defendant states that the allegation contained therein is a legal conclusion and no response is required.

93.    Defendants Kemmer, Stidham, and Wyckhouse acted under color of statute,

ordinance, regulation, custom, or usage of the State of Ohio and deprived Plaintiff of her rights, privileges, or immunities secured by the federal Constitution or federal law when they terminated her employment because of her sexual orientation. Alternatively, Plaintiff's sexual orientation was a motivating factor in their decision to terminate her employment.

**ANSWER:** As to ¶ 93 of the Complaint, Defendant denies the allegations contained therein.

94. As a proximate result of Defendants Kemmer, Stidham, and Wyckhouse's actions, Plaintiff has been and continues to be damaged in an amount to be determined at trial.

**ANSWER:** As to ¶ 94 of the Complaint, Defendant denies the allegations contained therein, and states that Plaintiff is not entitled to any of the relief she seeks or to any relief whatsoever.

95. Plaintiff is entitled to punitive damages because Defendants Kemmer, Stidham, and Wyckhouse were motivated by evil motive or intent or acted with reckless or callous indifference to Plaintiff's federally protected rights.

**ANSWER:** As to ¶ 95 of the Complaint, Defendant denies the allegations contained therein, and states that Plaintiff is not entitled to any of the relief she seeks or to any relief whatsoever.

96. Consistent with 42 U.S.C. § 1988, Plaintiff is entitled to reasonable attorneys' fees incurred in pursuing Count VI.

**ANSWER:** As to ¶ 96 of the Complaint, Defendant denies the allegations contained therein, and states that Plaintiff is not entitled to any of the relief she seeks or to any relief whatsoever.

97. Defendant denies each and every allegation not specifically admitted in this Answer.

98. Defendant denies that Plaintiff is entitled to the relief sought in the WHEREFORE clause of the Complaint, or to any relief whatsoever. Defendant hereby asserts the following defenses which may include one or more affirmative defenses.

## AFFIRMATIVE AND OTHER DEFENSES

1. The Complaint fails in whole or in part to state a claim upon which relief may be granted.

2. Plaintiff has failed to timely and/or properly exhaust her administrative remedies and/or failed to comply with those administrative prerequisites necessary to bring suit under Title VII, 42 U.S.C. § 2000(e), *et seq.*

3. The applicable statute of limitations may bar some or all of the claims in Plaintiff's Complaint.

4. Defendant did not treat Plaintiff differently as compared with similarly-situated employees.

5. Plaintiff's claims are barred in whole or in part by the doctrine of after-acquired evidence.

6. Defendant asserts any and all immunities to which it may be entitled under state and federal laws.

7. Plaintiff has not alleged facts sufficient to entitle her to equitable relief.

8. Defendant exercised reasonable care to prevent and promptly correct any alleged discriminatory or retaliatory acts or behavior on the part of its employees.

9. Defendant fully complied with the provisions and requirements of any applicable laws, including Title VII, 42 U.S.C. § 2000e, *et seq.*

10. Plaintiff's claims for damages and other relief are barred in whole or in part by the limitations imposed by law as to the recovery of such damages or other relief.

11. Defendant did not discriminate or retaliate against Plaintiff or engage in any unlawful conduct against Plaintiff at any time, and its actions were reasonable, made in good faith, and based solely on legitimate, non-discriminatory, non-pretextual, good-faith business reasons.

12. Plaintiff has no right to damages because Defendants would have made the same decisions and taken the same action absent any unlawful motivation.

13. Plaintiff's claims are barred, in whole or in part, by Plaintiff's failure to mitigate her damages.

14. Subject to discovery, Plaintiff's claims are barred by the doctrines of estoppel, consent, waiver, and laches.

15. Defendants reserve the right to add additional defenses, including affirmative defenses, as discovery proceeds in this litigation.

WHEREFORE, Defendant respectfully requests that Plaintiff's Complaint be dismissed with prejudice at Plaintiff's costs, and that the Court award Defendant reasonable attorney's fees and any other relief to which it is entitled.

Respectfully submitted,

DAVE YOST (0056290)
Ohio Attorney General

*/s/ Rory P. Callahan*

RORY P. CALLAHAN (0072021)
*Trial Counsel*
ANNA M. SEIDENSTICKER (0046761)
Principal Assistant Attorneys General
ANDREA C. WILTROUT (0098288)
Associate Assistant Attorney General
Employment Law Section
30 East Broad Street, 23rd Floor
Columbus, Ohio 43215
(614) 644-7257 - Telephone
(614) 752-4677 - Facsimile
elsreview@ohioattorneygeneral.gov

## CERTIFICATE OF SERVICE

This will certify that the foregoing *Answer of Defendant Ohio State Highway Patrol* was

filed electronically on July 19, 2019. Notice of this filing will be sent to all parties by operation

of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Rory P. Callahan*

RORY P. CALLAHAN (0072021)
*Trial Counsel*
Principal Assistant Attorney General