IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

STACEY ARNOLD YERKES,

        Plaintiff,

                             **Case No. 2:19-cv-2047**
     v.                     **JUDGE EDMUND A. SARGUS, JR.**
                             **Magistrate Judge Elizabeth Preston Deavers**

OHIO STATE HIGHWAY
PATROL, *et al.*,

        **Defendants.**

## OPINION AND ORDER

This matter is before the Court on Defendants' Ohio State Highway Patrol, Gene Smith, Michael Kemmer, William Stidham and Scott Wyckhouse (collectively, "Defendants") Motion for Summary Judgment and Qualified Immunity of Individual Defendants Gene Smith, Michael Kemmer, William Stidham and Scott Wyckhouse (collectively, "Individual Defendants") ("Defs.' Mot.," ECF No. 96). Plaintiff filed a response in opposition ("Pl.'s Resp.," ECF No. 106) and Defendants replied ("Defs.' Reply," ECF No. 110). For the reasons set forth below, the Court **DENIES** Defendants' Motion.

### I. Background

Plaintiff Stacey Arnold Yerkes is a gay female who worked at the Ohio State Highway Patrol (the "Patrol") from 1994 until 2018. (Arnold Yerkes Decl. ¶¶ 3, 4, 19, ECF No. 106, Ex. 1.) From 2014 to 2018, Plaintiff worked as Criminal Interdiction Training Sergeant training law enforcement officers in Ohio and throughout the country. (*Id.* ¶ 5.)

The four Individual Defendants were Plaintiff's supervisors or coworkers at the Patrol. Plaintiff's direct supervisor was Lieutenant Nathan Dickerson. (Dickerson Dep., 18:25–20:1,

29:12–30:7, ECF No. 82.) Dickerson's supervisor was Lieutenant William Stidham ("Defendant Stidham"), Defendant Stidham's supervisor was then Captain Michael Kemmer ("Defendant Kemmer"), and Defendant Kemmer's supervisor was Major Gene Smith ("Defendant Smith"). (*Id.*) One of Plaintiff's coworkers was Lieutenant Scott Wyckhouse ("Defendant Wyckhouse"). (Wyckhouse Dep., 10:24–14:10, ECF No. 83.)

## A. Individual Defendants' Alleged Statements Concerning Sex, Sexual Orientation

Plaintiff's direct supervisor, Lt. Dickerson, allegedly heard the Individual Defendants make discriminatory and derogatory statements about women. (Dickerson Dep. 70:23–89:17, 101:11–103:18.) He heard Defendant Kemmer, Stidham, and Wyckhouse refer to women at the Patrol as a "bitch," "fucking bitch," "cunt," "fucking cunt," and "broad." (*Id.* at 72:24–76:3, 103:2–103:7; Wyckhouse Dep. 41:3–43:20.) Lt. Dickerson heard the individual defendants use this language when Defendant Smith was present and avers that Defendant Smith did not try to stop the comments. (Dickerson Dep. 103:9–18.) Lt. Dickerson further alleges that Defendants Kemmer and Stidham said "women are only promoted here because they are women, not because of merit" and "the only reason women are allowed to perform lower than men is because they are women." (*Id.* 76:20–79:20.)

Lt. Dickerson testified that Defendants Kemmer and Stidham said Plaintiff's haircut was "stupid" and "butch." (*Id.* at 81:3–83:4.) He also heard them say Plaintiff was "emotional," and "women are like that and bring that with them to the workplace." (*Id.* at 83:22–87:9.) Finally, he heard Defendant Stidham comment on Plaintiff wearing makeup and earrings to work, saying, "what, is she trying to be a girl now?" (Dickerson AIU Interview Transcript, p. 20, ECF No. 106, Ex. 7.)

**B.  Individual Defendants' Alleged Differential Treatment of Plaintiff**

Plaintiff alleges that the Individual Defendants began targeting and criticizing her beginning in April 2017 for minor infractions that were common at the Patrol such as leaving her patrol vehicle running and unattended at a patrol post and not wearing her Patrol-issued Stetson hat during a traffic stop. (Arnold Yerkes Decl. ¶¶ 29(a)–(e).) Plaintiff also alleges that her heterosexual male colleagues were not criticized for doing the same things. (*Id.* ¶ 32; Smart Dep., 55:10–61:2, 70:3–71:3, ECF No. 78; Wyckhouse Dep. 73:25–74:17.)

Defendants Kemmer, Stidham, and Wyckhouse also began requiring Plaintiff to perform "demeaning" tasks that were not within her job duties. (Arnold Yerkes Decl. ¶ 34.) Plaintiff's partner, Sergeant Smart, a heterosexual male, held the same position as her but was not required to do the same tasks. (Smart Dep. 97:5–98:14.)

**C.  Plaintiff Complains About Discrimination and Files EEOC Charge**

On December 6, 2017, Plaintiff complained to her supervisor, Lt. Dickerson, that Defendants Kemmer, Stidham, and Wyckhouse were treating her differently than Sergeant Smart and other heterosexual males. (Arnold Yerkes Decl. ¶ 36.) On January 26, 2018, in a Patrol Post meeting that included Defendants Kemmer and Stidham, Plaintiff complained that she felt "targeted" and treated differently because of her sex. (Arnold Yerkes Decl. ¶ 37; Arnold Yerkes Dep. I, 306:7–314:14, ECF No. 79.) On January 29, 2018, three days after the Patrol Post meeting, Plaintiff filed an EEOC charge alleging sex and sexual orientation discrimination. (Arnold Yerkes Decl. ¶ 39.) Lt. Dickerson overheard Defendants Stidham and Kemmer discussing the EEOC charge. (Dickerson Dep., 108:11–109:23.)

3

### D. Plaintiff's Tattoo and the Patrol's Tattoo Policy

On January 30, 2018, Defendant Wyckhouse told Defendant Stidham that his men had seen a tattoo on Plaintiff's forearm that she covered with a medical sleeve. Defendant Wyckhouse reported that some of the troopers under Plaintiff's supervision were upset because she had a tattoo on her arm in violation of the Patrol appearance standards policy. (Stidham Dep. 107.) The policy states, in pertinent part:

> (3) All uniformed employees. . .hired prior to July 22, 2015, with tattoos, brandings, or body art that are visible in any class of uniform shall not be required to remove the existing tattoo, branding, or body art but shall not add to, modify, enhance or receive additional tattoos, brandings, or body art.
>
> (4) Tattoos, brandings, or body art will be covered by any employee while representing the Division and not in uniform at any event or meeting, i.e., speech details, court appearances, public events, etc.

(Ex. 6 at 92, ECF No. 104.) Plaintiff obtained her tattoo in 2017.  She wore a medical sleeve on her arm for her chronic elbow pain that also covered her tattoo. (Arnold Yerkes Decl. ¶ 43.) The Patrol's representative noted that her medical sleeve could "possibly" constitute an approved uniform change that would allow her to comply with the tattoo policy. (Patrol R. 30(b)(6) Dep. I 66:12–68:2.)

Defendants Wyckhouse and Stidham reported that Plaintiff might have a tattoo to Defendant Kemmer who reported it to Defendant Smith. In turn, Smith had Defendant Kemmer solicit written statements from each of the men who observed the tattoo. (Wyckhouse Dep. 52:15–54:22; Kemmer Dep. 108:4–114:2, ECF No. 84; Smith Dep. 62:2–68:20.)

On February 2, 2018, Defendant Kemmer confronted Plaintiff and ordered her to remove her medical sleeve and show her tattoo. Plaintiff declined. Defendant Kemmer replied that Plaintiff would be "written up for insubordination" and dismissed her. (*Id.* at 115:24–119:7.) He reported

these events to Defendant Smith, who reported them to the Patrol's human resources department. (*Id.* at 122:10–123:14; Smith Dep., 71:13–72:9.)

### E.  Human Resources Investigation

On February 5, 2018, the Patrol's human resources department began investigating the incident. Plaintiff was charged with (1) violating the appearance standards policy by having a visible tattoo, and (2) insubordination for refusing Defendant Kemmer's order to reveal her tattoo. (Bush Dep., 121:20–126:4, ECF No. 91; Linek Dep., 18:6–20:14, 23:25–27:6.)

On February 7, 2018, Captain Linek reviewed the human resources report with his staff and recommended that Plaintiff face termination or sign a Last Chance Agreement (LCA). (Linek Dep., 34:23–40:10, 61:7–63:586.) The LCA was a three-year agreement that demoted Plaintiff to Trooper, reduced her salary and job responsibilities, and required her to remove her tattoo. It also required Plaintiff to waive her legal rights concerning the tattoo incident, waive her right to file future EEOC charges about past Patrol actions, and withdraw her current EEOC charge. (LCA, Linek Dep. Ex. 6 PAGEID#4067, ECF No. 86-1.)

Colonel John Born, Director of the Department of Public Safety, approved the decision to offer Plaintiff the LCA on February 8, 2018. (Born Dep. I, 12:11–12:24, ECF No. 85.)

According to the Patrol representative, the Patrol does not actively enforce the tattoo policy unless a supervisor brings it to their attention. Plaintiff alleges that Lieutenant Tim Karwatski and trooper Nicholas Malo, both heterosexual males, had visible tattoos but were not disciplined because their supervisors did not report them to human resources. (Patrol R. 30(b)(6) Dep. I, 80:1–81:9, 154:13–161:18.) Captain Linek alleges, however, that there were two Patrol dispatchers who were reported and they were required to sign LCAs and remove their new tattoos. (Linek Dep. 112.)

### F. Plaintiff Retires

Plaintiff rejected the LCA and retired on February 12, 2018, to avoid the "not in good standing" designation a termination would leave on her file. (Arnold Yerkes Decl., ¶¶ 49–51.) The Patrol replaced Plaintiff with Sergeant Trevor March, a heterosexual male. (Patrol R. 30(b)(6) Dep. I, 190:3–202:7 & Dep. Ex. 24.)

Plaintiff filed this action on May 20, 2019, alleging the Patrol discriminated and retaliated against her based on her sex and sexual orientation in violation of Title VII of the Civil Rights Act of 1964. She also alleges the Individual Defendants discriminated against her based on her sex and sexual orientation in violation of the Civil Rights Act of 1871, 42 U.S.C. § 1983. (*See* Compl., ECF No. 15; Pl.'s Resp. at 40.) Defendants moved for summary judgment on all claims. That motion is ripe for review.

## II. Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court may therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions" of the record which demonstrate "the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)). "The evidence of the nonmovant is to be believed, and all justifiable inferences

6

are to be drawn in his favor." *Id.* at 255 (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248; *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (The requirement that a dispute be "genuine" means that there must be more than "some metaphysical doubt as to the material facts."). Consequently, the central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234–35 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251–52).

### III. Analysis

Defendants move for summary judgment on each of Plaintiff's claims, arguing: (1) her claims are barred by the statute of limitations and her failure to exhaust administrative remedies; (2) the Individual Defendants are entitled to Qualified Immunity; (3) Plaintiff cannot show sex or sexual orientation discrimination under Title VII and § 1983; (4) Plaintiff cannot show retaliation under Title VII. The Court examines each argument in turn.

### A. Statute of Limitations, Exhausting Administrative Remedies

Defendants first argue that Plaintiff cannot pursue any claims outside the end of her employment in February 2018 because of the statute of limitations and her failure to exhaust administrative remedies. (Defs.' Mot. at 19.) Plaintiff clarifies that she seeks relief for only one adverse employment action, her loss of employment in February 2018. The other incidents of alleged discrimination are offered only to show Defendants' motive behind the February 2018 adverse employment action. (Pl.'s Resp. at 40.)

Plaintiff's claims are not barred by the statute of limitations or failure to exhaust administrative remedies because she filed an EEOC discrimination charge on February 23, 2018 alleging that Defendants forced her to retire on February 12, 2018. (Arnold Yerkes I, Ex. 94). Under Title VII, a plaintiff must file an EEOC charge within 180 days after the allegedly unlawful practice occurred to exhaust her administrative remedies in a timely manner. 42 U.S.C. § 2000e-5(e)(1).

### B.  Individual Defendants' Qualified Immunity From § 1983 Claim

To state a claim under the Civil Rights Act of 1871, 42 U.S.C. § 1983, a plaintiff must allege that a person acting under the color of state law deprived her of a constitutional right. *West v. Atkins*, 487 U.S. 42, 48 (1988). A government official is "entitled to qualified immunity on summary judgment unless the facts, when viewed in the light most favorable to the plaintiff, would permit a reasonable juror to find that: (1) the defendant violated a constitutional right; and (2) the right was clearly established." *Bishop v. Hackel*, 636 F.3d 757, 765 (6th Cir. 2011).

A right is clearly established if "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). The fundamental inquiry is whether public officials are "on notice their conduct is unlawful." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quotation omitted). In other words, "the unlawfulness must be apparent." *Id.* A district court has discretion to decide whether there was a constitutional violation and a violation of clearly established law. *Id.*

Plaintiff alleges that the Individual Defendants treated her differently than heterosexual male employees by excessively scrutinizing her conduct, forcing her to perform demeaning tasks, and making derogatory comments about her and other female employees. Plaintiff further alleges

that the Individual Defendants forced her into retirement after she filed an EEOC claim by making her choose between retiring or accepting a demotion and releasing any discrimination claims.

As this Court found in its Order on Defendants' Motion to Dismiss (ECF No. 29), discriminating against Plaintiff because of her sex and sexual orientation is a violation of the Fourteenth Amendment. Furthermore, there is clearly established law protecting female employees from arbitrary discrimination based on sex or sexual orientation for § 1983 purposes so that Defendants were "on notice that their conduct was unlawful." (*Id.* at 20–23.) Viewing the evidence in a light most favorable to Plaintiff, a reasonable juror could find from the record that the Individual Defendants violated Plaintiff's Fourteenth Amendment right to be free from discrimination and retaliation based on sex or sexual orientation and were on notice that their conduct was unlawful. Therefore, the Individual Defendants are not entitled to qualified immunity.

### C. Plaintiff's Sex and Sexual Orientation Discrimination Claims

Plaintiff asserts sex and sexual orientation discrimination claims against the Patrol under Title VII. Title VII prohibits an employer from taking adverse employment actions against an employee because of her "race, color, religion, sex…" 42 U.S.C. § 2000e, *et seq*. Although not explicitly listed in Title VII, sexual orientation is another prohibited basis for discrimination. *See Kilpatrick v. HCA Human Res., LLC*, 838 F. App'x 142, 145 (6th Cir. 2020) (*citing Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1741 (2020)).

Because Title VII only governs employers, Plaintiff asserts sex and sexual orientation discrimination claims against the Individual Defendants under 42 U.S.C. § 1983. To state a claim under § 1983, a plaintiff must allege that a person acting under the color of state law deprived her of a constitutional right. *West v. Atkins,* 487 U.S. 42, 48 (1988); *Harris v. City of Circleville,* 583 F.3d 356, 364 (6th Cir. 2009). Here, Plaintiff claims the Individual Defendants deprived her of the

constitutional right to equal protection from adverse employment decisions based on "discriminatory intent and purpose." *Charles v. Baesler*, 910 F.2d 1349, 1356–57 (6th Cir. 1990).

Because the Sixth Circuit applies Title VII cases to discrimination claims under § 1983, *Weberg v. Franks*, 229 F. 3d 514, 522 (6th Cir. 2000), this Court examines Plaintiff's Title VII claim against the Patrol and § 1983 claim against the Individual Defendants concurrently.

### 1. Direct Evidence

A plaintiff may show discrimination using direct or circumstantial evidence. *Jones v. St. Jude Med. S.C., Inc.*, 823 F. Supp. 2d 699, 721 (S.D. Ohio 2011). "Direct evidence is evidence that requires the conclusion, without any inference, that unlawful discrimination was at least a motivating factor in an employer's actions." *Douglas v. Eaton Corp.*, 577 F. App'x 520, 523, n.1 (6th Cir. 2014) (citing *Johnson v. Kroger Co.*, 319 F.3d 858, 865 (6th Cir. 2003). The evidence "must establish not only that the plaintiff's employer was predisposed to discriminate on the basis of [sex or sexual orientation], but also that the employer acted on that predisposition." *Hein v. All Am. Plywood Co.*, 232 F.3d 482, 488 (6th Cir. 2000). Thus, Plaintiff may defeat summary judgment by putting forth sufficient facts to create a genuine question of whether her sex or sexual orientation was at least a motivating factor in the Patrol's decision to terminate her.

Plaintiff argues that the Individual Defendants' derogatory comments about women and gay people are sufficient direct evidence of sex discrimination. (Pl.'s Resp. at 42.) Defendants assert that the comments are not direct evidence of discrimination because the Individual Defendants did not make comments directly to Plaintiff about her sex or sexual orientation and there is no evidence connecting the comments to Plaintiff's termination. (Defs.' Mot. at 22.)

Lt. Dickerson testified that the Individual Defendants used terms like "bitch," "fucking bitch," "cunt," "fucking cunt," and "broad," and that some of these terms were "common

language" at the Patrol. He allegedly heard the Individual Defendants mock Plaintiff as "looking stupid," "looking butch," and being "emotional" because "women are like that and bring that with them to the workplace." He likewise heard them comment on Plaintiff's earrings and makeup, stating, "what, is she trying to be a girl now?" Further, Defendants Kemmer and Stidham allegedly stated that women are not promoted because of merit and that women perform lower than men. According to Lt. Dickerson, Defendant Smith, the Major overseeing Defendants Kemmer, Stidham, and Wyckhouse, tolerated this language and did not take steps to address it.

It is arguable whether Plaintiff has direct evidence, but not necessary because Plaintiff has circumstantial evidence of discrimination.

## 2. Circumstantial Evidence

In the absence of direct evidence, a plaintiff may use circumstantial evidence to show discrimination under the *McDonnell-Douglas* framework. *Jones*, 823 F. Supp. 2d at 721. Under the *McDonnell-Douglas* burden-shifting framework, a plaintiff must first demonstrate a *prima facie* case of discrimination by showing that she: (1) "is a member of a protected class," (2) "was qualified for h[er] job," (3) "suffered an adverse employment decision," and (4) "was replaced by a person outside the protected class or treated differently than similarly situated non-protected employees." *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 391 (6th Cir. 2008) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). If the plaintiff makes such a showing, the burden shifts to the defendants, who must "offer evidence of a legitimate, non-discriminatory reason for the adverse employment action." *Id.* A successful articulation on the part of the defendants then shifts the burden back to the plaintiff to prove that the defendant's proffered reason was "merely a pretext for discrimination." *Id.* at 391–92.

a. ***Prima Facie* Case**

Defendants argue that Plaintiff cannot show the third or fourth elements of the *prima facie* case because she did not suffer an adverse action since she retired voluntarily, and no comparators were treated more favorably. (Defs.' Mot. at 24, 26.) The plaintiff's burden of establishing, much less creating a genuine issue of material fact over, a *prima facie* case "is not onerous." *See Texas Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

i. **Adverse Employment Action**

A plaintiff may prove she suffered an adverse employment action "by demonstrating she was constructively discharged." *Logan v. Denny's*, 259 F.3d 558, 568 (6th Cir. 2001). Constructive discharge occurs where "(1) the employer deliberately created intolerable working conditions, as perceived by a reasonable person; (2) the employer did so with the intention of forcing the employee to quit; and (3) the employee actually quit." *Lee v. Cleveland Clinic Found.*, 676 F. App'x 488, 495 (6th Cir. 2017).

To determine whether the employer deliberately created intolerable working conditions, courts consider demotions, reductions in salary, reductions in job responsibilities, reassignments to menial or degrading work, badgering, harassment, or humiliation, and offers of early retirement or continued employment on terms less favorable. *Logan*, 259 F.3d at 569. Here, the LCA constituted an offer of continued employment on less favorable terms, including a demotion, reduction in pay, and reduction in job responsibilities. A reasonable juror could find that, after Plaintiff's long-term position as a supervisor and Training Sergeant, her demotion to a patrol post trooper—where she would be supervised by less experienced personnel, have a reduced salary, and fewer responsibilities—was an intolerable working condition. Additionally, the severity of the LCA's terms create a genuine issue of fact as to whether Defendants offered Plaintiff the LCA

12

with the intention of forcing her to quit. Finally, plaintiff quit by voluntarily retiring. Plaintiff has established the factors for constructive discharge and meets the third *prima facie* element.

### ii. Similarly Situated Comparators or Non-Protected Replacement

The fourth element of the *prima facie* case requires Plaintiff to produce evidence of non-protected comparators that were "similar to the plaintiff in all relevant aspects" but treated differently, or evidence that she was replaced by someone outside her protected class. *Highfill v. City of Memphis*, 425 F. App'x 470, 474 (6th Cir. 2011). Plaintiff meets this element because the Patrol replaced her with a heterosexual male.

### b. Legitimate Non-Discriminatory Reason

Defendants produce a legitimate non-discriminatory reason for disciplining Plaintiff. Defendants contend that Plaintiff was fired because (1) she had a tattoo on her forearm in violation of the Patrol's appearance standards policy, and (2) she was insubordinate when she disobeyed Defendant Kemmer's order to uncover her tattoo. (Defs.' Mot. at 1.)

### c. Pretext

A plaintiff may establish pretext by showing the defendant's reason for termination: (1) lacked a basis in fact; (2) did not actually motivate the adverse employment action; or (3) was insufficient to warrant the adverse employment action. *Seeger v. Cincinnati Bell Tel. Co., LLC*, 681 F.3d 274, 285 (6th Cir. 2012). To show pretext, Plaintiff must show "sufficient evidence from which the jury could reasonably reject [Defendants'] explanation and infer that [Defendants] intentionally discriminated against [her]." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515–516 (1993).

A reasonable jury could find that Plaintiff's tattoo and single incident of insubordination were insufficient to warrant Defendants' adverse action or did not actually motivate the adverse

action.[1] First, Plaintiff presents evidence that her tattoo and insubordination were insufficient to warrant termination because she wore an approved medical sleeve that hid her tattoo and therefore abided by the appearance policy. Second, Plaintiff contends her actions were insufficient to warrant termination because the Patrol does not actively enforce the tattoo policy and Plaintiff named two heterosexual males who had tattoos but were not disciplined. Finally, the Individual Defendants' discriminatory comments are evidence of pretext because most of the Individual Defendants held managerial positions over Plaintiff. *Risch v. Royal Oak Police Dept.*, 581 F.3d 383, 385–94 (6th Cir. 2009) (discriminatory comments by non-decisionmakers who hold managerial positions may be evidence of pretext). In sum, there is a genuine issue for trial of whether Defendants' asserted reason for disciplining Plaintiff was pretextual for discrimination.

### 3. Cat's Paw Theory of Liability

Even though Colonel Born was the final decisionmaker, Plaintiff may potentially recover under a cat's paw theory of liability. Under this theory, a plaintiff can impute a subordinate employee's actions onto an employer by showing that "by relying on [a] discriminatory information flow, the ultimate decisionmakers acted as the conduit of [the subordinate employee's] prejudice—[his] cat's paw." *Chattman*, 686 F.3d at 350 (internal citations omitted). In *Staub v. Proctor Hosp.*, the Supreme Court clarified the cat's paw theory, holding that "if a supervisor performs an act motivated by [discriminatory] animus that is intended by the supervisor to cause an adverse employment action, and that if that act is a proximate cause of the ultimate employment action, then the employer is liable." 562 U.S. 411, 422 (2011). Accordingly, Plaintiff must

---

[1] Whether Plaintiff's insubordination was sufficient to warrant the adverse action is a closer call. Still, viewing the facts in a light most favorable to Plaintiff and drawing all reasonable inferences in her favor, a reasonable juror could find her termination was not justified. A reasonable juror could find that the insubordination did not motivate the action, that other male employees were treated better, or that people outside the protected class received a lesser discipline.

establish a genuine dispute of material fact as to: (1) the Individual Defendants' intent, and (2) the causal link between the Individual Defendants' discriminatory animus and the Patrol's employment decision.

There is a genuine issue as to whether the Individual Defendants' intent was motivated by discriminatory animus because of their derogatory phrases to describe women and gay people, and their comments that women are only promoted because of their sex, and women are too "emotional" in the workplace.

Viewing the evidence in a light most favorable to Plaintiff, there is also evidence of a causal link between the Individual Defendants' discriminatory animus and the Patrol's decision to discipline Plaintiff for her tattoo. A reasonable juror could find that the Plaintiff would not have been fired or disciplined if the Individual Defendants had not reported her and investigated her tattoo. Defendant Wyckhouse found the witnesses who reported Plaintiff had a tattoo, Defendant Stidham brought the information to Defendant Kemmer, and Kemmer solicited the witness statements at the direction of Defendant Smith, and then Defendant Smith reported everything to the human resources department. Because of the evidence alleging Individual Defendant's discriminatory comments, there is an issue of fact as to whether they reported Plaintiff's tattoo, in part, because of her sex.

Furthermore, Defendant Wyckhouse reported Plaintiff's tattoo because male troopers allegedly did not respect Plaintiff's authority since she violated policies. However, there is evidence that male supervisors violated policies but were not reported or did not have issues with subordinates refusing to respect authority. Plaintiff may therefore proceed against the Individual Defendants under a cat's paw theory of liability. *See Paterek v. Vill. of Armada*, 801 R.3d 630, 651 (6th Cir. 2015).

Defendants' motion for summary judgment as to Plaintiff's sex and sexual orientation discrimination claims under Title VII and § 1983 is **DENIED**.

### D. Plaintiff's Title VII Retaliation Claim

Plaintiff asserts a Title VII Retaliation claim against the Patrol. Title VII's antiretaliation provision forbids employer actions that "discriminate against" an employee because she "opposed" a practice that violates Title VII. 42 U.S.C. §2000e–3(a). A plaintiff may show retaliation using direct or circumstantial evidence. *Abbott v. Crown Motor Co., Inc.*, 348 F.3d 537, 542 (6th Cir. 2003). Retaliation claims based on indirect evidence are subject to the *McDonnell Douglas* burden-shifting framework. *Mansfield v. City of Murfreesboro*, 706 F. App'x 231, 236 (6th Cir. 2017).

### a. Direct Evidence

Plaintiff argues that the LCA is direct evidence of retaliation because it conditions Plaintiff's continued employment on an unlawful term requiring her to waive future rights and the right to file an EEOC charge. Courts have held that LCAs waiving future legal rights and remedies based on an employer's future conduct are per se direct evidence of retaliation. *See Lester v. O'Rourke*, No. 17-cv-1772, 2018 U.S. Dist. LEXIS 107091, at *11 (N.D. Ill. June 27, 2018) ("the LCAs at issue in this case did not merely seek to bar claims based on past conduct, they attempted to bar claims based on all past and future conduct of [the employer] for the two-year term of the LCA."). The Patrol's LCA, however, only limits rights based on past conduct, not future conduct. Section 10 of the LCA states:

> The Employee agrees to waive any and all rights they currently or subsequently possess to receive any reparation, restitution or redress for the events which formed the basis of the aforementioned disciplinary action, including the right to resort to administrative appeal or through the institution of legal action. Additionally, the Employee waives her right to any legal proceedings against the Employer as a result of the action taken against her from the aforementioned administrative investigation. The Employee also agrees to withdraw any charged discrimination filed with the Equal Employment Opportunity Commission or the Ohio Civil Rights Commission related to this incident.

(LCA, ECF No. 86, PAGEID #4068.) The Sixth Circuit has found LCAs limiting future rights to sue for past incidents are reasonable. *See Sako v. Ohio Dep't of Admin. Servs.*, 278 F. App'x 514, 516–17 (6th Cir. 2008) (upholding waiver of EEOC claim as part of settlement of grievance with union and the plaintiff). Since Plaintiff does not have direct evidence of retaliation, the Court next determines whether Plaintiff has circumstantial evidence of retaliation.

### b. Circumstantial Evidence

To establish a *prima facie* case of retaliation using circumstantial evidence, a plaintiff must show that: (1) she engaged in protected activity; (2) the defendant knew of this activity; (3) the defendant took an action that was materially adverse to her; and (4) there is a causal connection between the protected activity and the materially adverse action. *DiCarlo v. Potter*, 358 F.3d at 420. A plaintiff's "burden of establishing a *prima facie* case in a retaliation action is not onerous, but one easily met." *Id.* If she presents sufficient evidence to establish a *prima facie* case, the burden shifts to the defendant to proffer a legitimate, non-discriminatory reason for the adverse action. *McDonnell Douglas Corp.*, 411 U.S. at 802. Once proffered, the burden shifts back to the plaintiff to demonstrate that the proffered reason is pretextual. *Id.* at 804.

### i. *Prima Facie* Case

Plaintiff meets the first *prima facie* element because she engaged in protected activity at least three times between December 2017 and January 2018. First, in December 2017, she told her

17

supervisor that she felt targeted because of her sex. She allegedly also told Defendants Kemmer and Stidham at the January 26, 2018 Patrol Post meeting that she felt targeted because of her sex and male troopers were not subject to the same scrutiny they gave to her. On January 29, 2018, Plaintiff filed her EEOC charge and told Lt. Dickerson and Sergeant Smart about the action. *See Crawford v. Chipotle Mexican Grill, Inc.*, 773 F. App'x 822, 827–28 (6th Cir. 2019) (filing an EEOC charge is protected activity); *McGuffey v. Hamilton City Sheriff's Off.*, 2020 U.S. Dist. LEXIS 134278, at *13, 17 (plaintiff's complaint that "certain male subordinates treated her disrespectfully" is protected activity).

Second, Plaintiff establishes sufficient evidence that the Defendants knew she engaged in a protected activity. Defendants assert that they only knew about her EEOC charge after they started investigating Plaintiff for her tattoo. If so, the charge could not have motivated their adverse action. (Defs.' Reply at 24.) Plaintiff, however, presents evidence that she engaged in protected activities between December 2017 and January 29, 2018, and the Patrol's investigation began January 30, 2018 when Defendant Wyckhouse told Defendant Kemmer about the tattoo and Kemmer decided to investigate and report it. (Pl.'s Resp. at 68.) Moreover, Defendant Kemmer knew Plaintiff engaged in protected activity because he attended the Patrol Post meeting where she complained that she was targeted because of her sex four days before he reported her tattoo. Lt. Dickerson further alleges that Defendant Kemmer knew about Plaintiff's EEOC charge before he reported her tattoo because he was talking about it in the hall with a colleague.

As to the fourth element, Defendants argue there is no evidence that Plaintiff's EEOC charge was the "but for" cause of their adverse action. (Defs.' Mot. at 37.)  Again, Defendants argue they did not know about Plaintiff's protected activity until after investigating her for

violating the tattoo policy, and even if they did, temporal proximity alone is insufficient to establish causation. The Court disagrees.

Plaintiff filed her EEOC charge and notified her supervisor on January 30, 2018. The next day, on January 31, 2018, Defendants Wyckhouse and Kemmer reported her tattoo to Captain Linek in the human resources department. Plaintiff was terminated with the option to sign the LCA on February 8, 2018. In sum, the Patrol started investigating Plaintiff's tattoo one day after she filed an EEOC charge, even though Defendants knew about it for several months prior, and offered her the LCA or termination within ten days of her filing her EEOC charge.

Although the Sixth Circuit has held that temporal proximity alone is insufficient to establish causation, it may be sufficient coupled with some other evidence. *Montell v. Diversified Clinical Servs.*, 757 F.3d 497, 505 (6th Cir. 2014) (citing *Mickey v. Zeidler Tool & Die Co*., 516 F.3d 516, 525 (6th Cir. 2008)). The strong evidence of temporal proximity, along with the fact that other male employees with tattoos were not disciplined, is sufficient additional evidence to overcome the low burden for a *prima facie* case of causation.

### ii. Pretext

Plaintiff does not dispute that Defendants proffered a legitimate, nondiscriminatory reason for the adverse action. The Court now analyzes whether Plaintiff has "demonstrate[d] that the proffered reason was not the true reason for the employment decision." *Burdine*, 450 U.S. at 256. At summary judgment, Plaintiff only needs to "produce evidence from which a jury could reasonably doubt the employer's explanation." *Chen v. Dow Chem. Co*., 580 F.3d 394, 400 n.4 (6th Cir. 2009) (citing *St. Mary's Honor Ctr.*, 509 U.S. at 515). While there are at least three ways to show pretext, *see Blizzard v. Marion Tech. Coll*., 698 F.3d 275, 285 (6th Cir. 2012), Plaintiff attempts to prove that the proffered reasons—her tattoo and insubordination—while factually true

19

were not sufficient to motivate discharge. Again, Plaintiff provides persuasive evidence of the one-day temporal proximity of her EEOC charge and Defendants' initiating an investigation into her tattoo. Additionally, the Patrol's representative stated that an employee could comply with the tattoo portion of the appearance standards policy if the employee had an approved medical sleeve that covered the tattoo, as Plaintiff had done. Plaintiff also named two male officers who had tattoos but were not disciplined for it. This evidence, when viewed in a light most favorable to Plaintiff, creates a genuine question as to whether Plaintiff was disciplined for her tattoo or for filing an EEOC charge and complaining to her superiors that she felt targeted because of her sex and sexual orientation.

Defendants contend that Plaintiff cannot establish that their reason was a pretext for discrimination because Defendants had an honest belief that she violated the tattoo policy. (Defs.' Mot. at 40.) If the employer had an honest belief in its proffered reason, the employee cannot establish pretext even if the employer's reason is ultimately found to be mistaken, foolish, trivial or baseless. *See Seeger*, 681 F.3d at 285–86. However, the honest belief doctrine applies where the plaintiff argues that "the employer's proffered reason has 'no basis in fact.'" *Reed v. Am. Cellular, Inc.*, 39 F.Supp.3d 951, 970 (M.D. Tenn. 2014) (collecting Sixth Circuit cases); *see also Amos*, 622 F. App'x at 543 n.10 ("[T]he defense responds more logically to the 'had no basis in fact' theory of pretext."). Here, the Plaintiff does not dispute that the proffered reason has a basis in fact. Instead, she argues that it is insufficient to warrant the LCA and did not actually motivate the Defendants' decision to offer her the LCA. Thus, the honest belief doctrine does not apply.

### iii. Cat's Paw Theory of Liability

As stated in the discrimination section above, Plaintiff may bring this retaliation claim against the Patrol based on evidence of the Individual's discriminatory animus under the cat's paw

theory of liability. *See supra* Section III.C.3. Plaintiff has shown sufficient evidence to establish a genuine issue of fact as to whether the Individual Defendants' discriminatory animus motivated them to investigate Plaintiff's tattoo and bring Plaintiff's tattoo to the Patrol's attention. Without the Individual Defendants' actions, the Patrol would not have disciplined Plaintiff for having a tattoo.

Defendants' motion for summary judgment on Plaintiff's Title VII retaliation claim against the Patrol is **DENIED**.

### IV. Conclusion

For the foregoing reasons, the Court **DENIES** Defendants' Motion for Summary Judgment and Qualified Immunity (ECF No. 96). This case remains open.

**IT IS SO ORDERED.**

<u>**12/30/2021**</u>                          <u>**s/Edmund A. Sargus, Jr.**</u>
**DATE**                                **EDMUND A. SARGUS, JR.**
                                **UNITED STATES DISTRICT JUDGE**