UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

STACEY ARNOLD YERKES,

             Plaintiff,

    v.                         Case No. 2:19-cv-02047
                                   JUDGE EDMUND A. SARGUS, JR.
OHIO STATE HIGHWAY         Magistrate Judge Elizabeth Preston Deavers
PATROL, *et al.*,

             Defendants.

## OPINION AND ORDER

This case involves an employment dispute in which Plaintiff, a former Training Sergeant with Defendant Ohio State Highway Patrol, alleges that Defendant discriminated and retaliated against her based on her sex and sexual orientation in violation of Title VII of the Civil Rights Act of 1964. This matter is presently before the Court pursuant to Defendant's omnibus Motion in Limine, which contains 12 individual motions in limine, and Plaintiff's four individual motions in limine. (ECF Nos. 132, 133, 134, 136, 137.) The parties have thoroughly briefed the issues, and the Court will address each motion in turn.

## I.     MOTION IN LIMINE STANDARD

Neither the Federal Rules of Evidence nor the Federal Rules of Civil Procedure explicitly authorize a court to rule on an evidentiary motion in limine. The United States Supreme Court has noted, however, that the practice of ruling on such motions "has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States,* 469 U.S. 38, 41 n. 4 (1984). The purpose of a motion in limine is to allow a court to rule on issues pertaining to evidence in advance of trial in order to avoid delay and ensure an evenhanded and expeditious trial. *See Ind. Ins. Co. v. Gen. Elec. Co.,* 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004) (citing

*Jonasson v. Lutheran Child & Family Servs.,* 115 F.3d 436, 440 (7th Cir.1997)). Notwithstanding this well-meaning purpose, courts are generally reluctant to grant broad exclusions of evidence in limine, because "a court is almost always better situated during the actual trial to assess the value and utility of evidence." *Koch v. Koch Indus., Inc.,* 2 F. Supp. 2d 1385, 1388 (D. Kan. 1998); *accord Sperberg v. Goodyear Tire & Rubber Co.,* 519 F.2d 708, 712 (6th Cir. 1975).

Evidentiary rulings are made subject to the district court's sound discretion. *Frye v. CSX Trans., Inc.*, 933 F.3d 591, 598 (6th Cir. 2019). To obtain the exclusion of evidence under such a motion, a party must prove that the evidence is clearly inadmissible on all potential grounds. *See Ind. Ins. Co.,* 326 F. Supp. 2d at 846; *Koch,* 2 F. Supp. 2d at 1388; *cf. Luce,* 469 U.S. at 41. "Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context." *Ind. Ins. Co.,* 326 F. Supp. 2d at 846.

Denial of a motion in limine does not mean that the evidence is guaranteed to be admitted at trial; the court will hear objections to such evidence if and when they arise at trial. *Maseru v. Univ. of Cin.*, No. 1:18-cv-106, 2022 U.S. Dist. LEXIS 188340, at *3 (S.D. Ohio Oct. 13, 2022) (citing *Gresh v. Waste Servs. of Am., Inc.*, 738 F. Supp. 2d 702, 706 (E.D. Ky. 2010)). Further, the court may, in its discretion, alter a previous in limine ruling during trial. *Luce*, 469 U.S. at 41–42.

## II.     DEFENDANT'S MOTIONS IN LIMINE

### 1. Defendant's Motion in Limine No. 1 to exclude any evidence regarding the dismissed claims against the former individual defendants and Defendant's motion for summary judgment.

Defendant's first Motion in Limine seeks to exclude two categories of evidence: (1) any evidence indicating "that the individual defendants were originally named in this lawsuit" because at least some of these individual defendants may be witnesses at trial; and (2) any evidence of the

fact that Defendant "filed a motion for summary judgment which was denied by the Court and related statements in the briefing and ruling on the pretrial motions." (ECF No. 136 at 1.) Defendant asserts that any references, evidence, or argument regarding these matters are inadmissible under Federal Rules of Evidence 401 and 403. (*Id.* at 1-2.)

Plaintiff does not oppose Defendant's first Motion in Limine. (ECF No. 140 at 1.) Indeed, Plaintiff represents that "the parties agree . . . that dismissed claims should not be revealed to the jury . . . ." (*Id.*) In any event, the Court notes the evidence contemplated in Defendant's Motion in Limine No. 1 is irrelevant. As such, the Court **GRANTS** Defendant's Motion in Limine No. 1.

**2. Defendant's Motion in Limine No. 2 to exclude certain discriminatory comments.**

In its second Motion in Limine, Defendant asks the Court to prohibit Plaintiff and her counsel from using the words "bitch," "cunt," "fucking bitch" or "fucking cunt," or variations on those profanities.[1] (*Id.* at 2.) By way of background, Defendant notes that "[d]uring depositions, Plaintiff's counsel used these terms approximately 100 times with at least 10 different witnesses." (*Id.*) Further, Defendant observes that there is no evidence in the record attributing any of these comments to the independent investigators of Plaintiff's misconduct, the decisionmakers who reviewed the investigation and recommended discipline, or that any of these alleged comments were communicated to the decisionmakers. (*Id.* at 3.) Thus, the argument goes, the only reason Plaintiff would introduce these profanities is if she intends to "confuse and inflame the jury," and therefore they should be excluded under Federal Rule of Evidence 403. (*Id.*)

Plaintiff marshals several arguments against Defendant's motion in limine. (ECF No. 140 at 2-3.) First, Plaintiff cites to Sixth Circuit precedent holding that discriminatory comments can

---

[1] Lieutenant Nathan Dickerson, Plaintiff's direct supervisor, testified in his deposition that he heard former-Defendants Kemmer, Stidham, and Wyckhouse refer to women at the Ohio State Highway Patrol as "bitch," fucking bitch," "cunt," "fucking cunt," and "broad." (Dickerson Dep. 72:24-76:3; 103:2-103:7, ECF No. 82.)

establish that a particular decision was discriminatory, even when such statements are made by non-decisionmakers. (*Id.* at 2 (citing *Griffin v. Finkbeiner*, 689 F.3d 584, 595 (6th Cir. 2012; *Risch v. Royal Oak Police Dept.*, 581 F.3d 383, 392–94 (6th Cir. 2009); *Birch v. Cuyahoga Cty. Probate Court*, 392 F.3d 151, 165–66 (6th Cir. 2004); *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 354–36 (6th Cir. 1998)).) Second, Plaintiff cites to this Court's Opinion and Order on summary judgment, which found that these allegedly discriminatory comments were not only arguably evidence of direct discrimination, but also relevant to Plaintiff's cat's paw theory of liability. (*Id.* at 3.)

The Court agrees with Plaintiff. The Federal Rules of Evidence provide that evidence is relevant, and thus generally admissible, if it (a) "has any tendency to make a fact more or less probable," and (b) "the fact is of consequence in determining the action." Fed. R. Evid. 401, 402. The Court may, however, exclude relevant evidence if "its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

This case involves sex and sexual orientation discrimination claims under Title VII. To prevail on her claims, Plaintiff must show discrimination, and she may do so using direct or circumstantial evidence. *Jones v. St. Jude Med. S.C., Inc.*, 823 F. Supp. 2d 699, 721 (S.D. Ohio 2011). As the Court noted on summary judgment, the discriminatory comments at issue here may constitute direct evidence of discrimination. (Op. & Order at 11, ECF No. 112.) In this same Opinion and Order, the Court proceeded to hold that these discriminatory comments constituted circumstantial evidence of discrimination because a reasonable juror could find that they established pretext for Defendant's decision to discipline Plaintiff. (*Id.* at 13-14 ("Finally, the Individual Defendants' discriminatory comments are evidence of pretext because most of the

4

Individual Defendants held managerial positions over Plaintiff.") (citing *Risch*, 581 F.3d at 385–94).) The Court's Opinion and Order also addressed the cat's paw theory of liability, finding that the discriminatory comments created "a genuine issue as to the whether the Individual Defendants' intent was motivated by discriminatory animus[.]" (*Id.* at 15.)

Against this backdrop, the Court finds that the discriminatory comments are relevant. That is, they tend to make a fact (*i.e.*, the presence of discrimination) more probable, and such fact is unquestionably of consequence in this Title VII action. Further, the Court is not persuaded that Rule 403 should bar the introduction of this relevant evidence. Accordingly, the Court **DENIES** Defendant's Motion in Limine No. 2.

**3. Defendant's Motion in Limine No. 3 to exclude any evidence of alleged disparate treatment regarding the alleged misconduct for which Plaintiff did not receive discipline, or other instances of discipline against other troopers that are unrelated to the investigation into Plaintiff's tattoo and insubordination.**

Defendant's third Motion in Limine requests an order excluding Plaintiff from introducing any evidence of alleged disparate treatment for alleged misconduct that did not result in Plaintiff being disciplined. (ECF No. 136 at 3.) In making this argument, Defendant directs the Court's attention to Plaintiff's Amended Complaint where she alleges that certain troopers engaged in a variety of behaviors (*e.g.*, leaving a patrol car running and unattended, not wearing a hat during a traffic stop, and leaving a shift early) that did not result in discipline, yet when Plaintiff engaged in such behaviors, she was "criticized." (*Id.* at 3-4.) Because her Amended Complaint alleges only that Plaintiff received criticism for this conduct, rather receiving any discipline, such alleged disparate treatment is irrelevant to Plaintiff's violation of the tattoo policy and subsequent subordination. (*Id.* at 4.)

The Court disagrees. As the Sixth Circuit recognized in *Rachells v. Cingular Wireless Employee Servs., LLC*:

> Circumstantial evidence establishing the existence of a discriminatory atmosphere at the defendant's workplace in turn may serve as circumstantial evidence of individualized discrimination directed at the plaintiff. While evidence of a discriminatory atmosphere may not be conclusive proof of discrimination against an individual plaintiff, such evidence does tend to add "color" to the employer's decisionmaking processes and to the influences behind the actions taken with respect to the individual plaintiff.

732 F.3d 652, 665 (6th Cir. 2013) (quoting *Risch*, 581 F.3d at 392). A defendant's "discriminatory comments can qualify as evidence that a particular decision was discriminatory if the speaker was 'in a position to influence the alleged decision.'" *Griffin v. Finkbeiner*, 689 F.3d 584, 595 (6th Cir. 2012) (quoting *Ercegovich*, 154 F.3d at 355). The *Griffin* court further noted that the comments of non-decisionmakers may also be probative evidence of discrimination, "such as when the speaker holds a management position, the statements are commonplace or made in a relevant context (such as a meeting in which personnel decisions are made), or where other evidence of animus exists." *Id.* at 596 (citing *Risch*, 581 F.3d at 393). Additionally, "management's consideration of an impermissible factor in one context may support the inference that the impermissible factor entered the decisionmaking process in another context." *Rachells*, 732 F.3d at 665 (quoting *Risch*, 581 F.3d at 392).

When evaluating "whether discriminatory atmosphere evidence is probative of discrimination in a particular case," district courts should consider "'the [actor]'s position in the [employer's] hierarchy, the purpose and content of the [conduct], and the temporal connection between the [conduct] and the challenged employment action, as well as whether the [conduct] buttresses other evidence of pretext.'" *Id.* (quoting *Risch*, 581 F.3d at 392). Under this analysis, the Sixth Circuit has permitted discriminatory atmosphere evidence in a variety of employment circumstances. *See, e.g.*, *Rachells*, 732 F.3d 652 (circumstantial evidence that director discriminated in promoting a Caucasian male demonstrated discriminatory atmosphere and was

probative of whether plaintiff faced individualized discrimination when terminated); *Risch*, 581 F.3d 383 (finding discriminatory treatment of women in distributing work and assigning duties evidenced a discriminatory atmosphere sufficient to raise a genuine issue of material fact concerning whether police department's proffered nondiscriminatory reason for failing to promote plaintiff was pretextual); *Ercegovich*, 154 F.3d at 355 (discriminatory remarks of non-supervisors "who may have influenced" defendant's adverse employment decision relevant to plaintiff's age discrimination claim).

Here, the evidence Defendant wishes to exclude is probative of an atmosphere hostile to female and gay officers. First, the Court considers Plaintiff's position in Defendant's hierarchy. *See Rachells*, 732 F.3d at 665 (quoting *Risch*, 581 F.3d at 392). As a Training Sergeant with decades of experience, Plaintiff was by no means at the bottom of the Patrol's hierarchy. But with that being said, her position was still subordinate to multiple levels within the Patrol. (*See* Op. & Order at 1-2, ECF No. 112 (describing the Patrol's hierarchy, noting that Plaintiff was subordinate to Lieutenant Dickerson, who was subordinate to Lieutenant William Stidham, who was subordinate to Captain Michael Kemmer, who was subordinate to Major Gene Smith).) Next, the "purpose and content" of the conduct evinces an atmosphere consisting of unevenly distributed criticism that turns on one's sex or sexuality following technical policy violations. *See Rachells*, 732 F.3d at 665 (quoting *Risch*, 581 F.3d at 392). Next, the "temporal connection between the [conduct] and the challenged employment action" suggests that the evidence is probative of a discriminatory atmosphere. *See id.* The criticism here allegedly began in April of 2017, shortly after Plaintiff lost her grievance over FMLA leave for the birth of her son. (Compl. ¶ 34, ECF No. 13.) Finally, the challenged evidence "buttresses other evidence of pretext." *See Rachells*, 732 F.3d at 665 (quoting *Risch*, 581 F.3d at 392.) For example, the criticism "adds color" to the

discriminatory comments, the Last Chance Agreement, and Defendant's decision to discipline Plaintiff. *See id.* at 669. Thus, this evidence, in turn, "may serve as circumstantial evidence of individualized discrimination directed at [Plaintiff]." *See Ercegovich*, 154 F.3d at 356. That Plaintiff received only criticism, rather than discipline, for the alleged misconduct may strike at the weight of the evidence, but it does not render the alleged disparate treatment irrelevant. As such, the Court **DENIES** Defendant's Motion in Limine No. 3.

**4. Defendant's Motion in Limine No. 4 to exclude any evidence from Plaintiff's expert witness of "reduction in value of life" or "quality of life" or "hedonic damages," including a calculation for non-economic damages.**

Defendant's Motion in Limine No. 4 challenges the extent to which Plaintiff's economic expert, Dr. Stanley Smith, can opine on damages concerning Plaintiff's "reduction in value of life" or her "quality of life." (ECF No. 136 at 4.) Defendant notes that Dr. Smith's estimation of these damages are relevant to "a personal injury or other tort, and not the sort of economic damages that are available as lost wages." (*Id.*)

Plaintiff does not oppose Defendant's fourth Motion in Limine. (ECF No. 140 at 1.) Plaintiff further represents that Dr. Smith will limit his testimony to back pay and front pay calculations. (*Id.*) In light of the parties' agreement on the scope of Dr. Smith's proposed testimony, the Court **GRANTS** Defendant's Motion in Limine No. 4.

**5. Defendant's Motion in Limine No. 5 to exclude any evidence regarding a rule change in its Professional Appearance Standards after the Plaintiff retired in February 2018.**

Defendant's next motion in limine seeks the exclusion of any evidence regarding the 2022 rule change to its dress code policy. (ECF No. 136 at 4-5.) As grounds for its motion, Defendant contends that (1) Federal Ruel of Evidence 407 bars evidence of the updated policy because it is a subsequent remedial measure; (2) the updated policy, which Defendant updated several years after

Plaintiff ended her employment with Defendant, is irrelevant; and (3) the introduction of the revised policy would be unfairly prejudicial. (*Id.*)

As an initial matter, the Court notes that the parties dispute whether the 2022 dress code policy simply *clarified* Defendant's prior policy or whether it substantively *revised* the policy. (*Compare* Def.'s Mot. in Limine at 4-5, ECF No. 136 *with* Pl.'s Opp'n at 5-7, ECF No. 140.) If clarified, as Plaintiff contends, the 2022 policy would be probative of pretext because it would support Plaintiff's position that the Last Chance Agreement ("LCA") had little basis in fact given that Plaintiff did not actually violate the dress code policy. (Pl.'s Opp'n at 6-7, ECF No. 140.) But even if the 2022 policy constitutes a revision to the policy in effect during Plaintiff's employment, the revised policy still may be relevant because it could undermine the "reasonableness" of Defendant's alleged adverse employment action by suggesting that Defendant actually believed that an officer who can work while covering his or her tattoos should not face discipline. *See Wexler v. White's Fine Furniture*, 317 F.3d 564, 576 (6th Cir. 2003). As for Rule 403, the Court is not persuaded at this time that the potential prejudice Defendant may face from the introduction of this evidence rises to the level that warrants its exclusion, though the Court's assessment may change depending on the classification of the updated policy (*i.e.*, the clarification-versus-modification dispute).

To the extent Defendant relies on Rule 407, the Court finds such reliance misplaced—at least at this juncture. Rule 407 reads as follows:

> When measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove:
>
> - negligence;
>
> - culpable conduct;
>
> - a defect in a product or its design; or

- a need for a warning or instruction.

But the court may admit this evidence for another purpose, such as impeachment or—if disputed—proving ownership, control, or the feasibility of precautionary measures.

Fed. R. Evid. 407.

Underlying Rule 407 is the general policy to encourage defendants to take proper remedial actions without worrying that such actions will be used against them in court. 2 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence, § 407.03[1] (2d ed.); *see also Polec v. Northwest Airlines (In re Air Crash Disaster)*, 86 F.3d 498, 529 (6th Cir. 1996). In other words, as the Advisory Committee Notes to Rule 407 explain, the Rule's protection of subsequent remedial measures has its roots in "a social policy of encouraging people to take, or at least not discouraging them from taking, steps in furtherance of added safety." Fed. R. Evid. 407 Advisory Committee Note.

Several circuits have indicated that the protection enshrined in Rule 407 does not extend beyond the limits of the Rule's underlying social policy. In *Rozier v. Ford Motor Co.*, the Fifth Circuit declined to apply Rule 407 to exclude subsequent remedial measure evidence where a report on design modifications "was not prepared out of a sense of social responsibility but because the remedial measure was to be required in any event by a superior authority . . . ." 573 F.2d 1332, 1343 (5th Cir. 1978). Similarly, the Tenth Circuit stated that, "[w]here a superior authority requires a tort feasor to make post-accident repairs, the policy of encouraging voluntary repairs which underlies Rule 407 has no force -- a tort feasor cannot be discouraged from voluntarily making repairs if he must make repairs in any case." *Herndon v. Seven Bar Flying Service, Inc.*, 716 F.2d 1322, 1331 (10th Cir. 1983). This Court, too, has expressed a similar view. *See In re Davol, Inc.*, No. 2:18-md-2846, 2021 U.S. Dist. LEXIS 237370, *59–66 (S.D. Ohio Dec. 13, 2021) (declining

to preclude evidence of subsequent measure under Rule 407 where there was neither a motivation to remediate nor a causal connection between the measure and plaintiff's injury).

Here, Defendant's motion in limine is silent as to Defendant's motive in updating the dress code policy. While there is no argument that a "superior authority" required Defendant to update its policy, Plaintiff contends that the purpose behind the change "was to expand recruiting—not to remedy prior discrimination." (ECF No. 140 at 6 (citing *Ohio State Highway Patrol Expands Tattoo Acceptance for Troopers*, OHIO STATE HIGHWAY PATROL (Oct. 14, 2022), https://statepatrol.ohio.gov/media/all-news/same-uniform).) Given this alleged purpose, Plaintiff contends that Defendant cannot use Rule 407 as a shield because the updated policy lacks a remedial basis. (*Id.*) If true—that is, if remedying past discrimination is *not* the driving force behind the updated policy—then barring such evidence would not further the social policy undergirding Rule 407. The Court would, thus, be inclined to deny Defendant's motion in limine. But the record provides little detail concerning the particulars of this evidence, and therefore the Court **RESERVES JUDGMENT** on it until the final pretrial conference or trial.

6. **Defendant's Motion in Limine No. 6 to exclude any statements or argument from Plaintiff and Plaintiff's counsel referring to the Last Chance Agreement offered to Plaintiff as evidence of discrimination or retaliation.**

Defendant's sixth motion in limine asks the Court to exclude any evidence and argument relating to the LCA Defendant offered Plaintiff. (ECF No. 136 at 5-6.) In seeking this exclusion, Defendant relies on the Court's Opinion and Order on summary judgment stating that a last chance agreement with a waiver of rights was lawful, as well as this Court's rejection of Plaintiff's argument that the LCA is direct evidence of retaliation. (*Id.*)

Plaintiff opposes Defendant's motion in limine, arguing that Defendant's request is overbroad and lacks supporting authority. (ECF No. 140 at 7-8.) The Court agrees. In this Court's

Opinion and Order on summary judgment, the undersigned held that, although the LCA did not constitute direct evidence of retaliation, it nonetheless provided *circumstantial* evidence of discrimination:

> Here, the LCA constituted an offer of continued employment on less favorable terms, including a demotion, reduction in pay, and reduction in job responsibilities. A reasonable juror could find that, after Plaintiff's long-term position as a supervisor and Training Sergeant, her demotion to a patrol post trooper—where she would be supervised by less experienced personnel, have a reduced salary, and fewer responsibilities—was an intolerable working condition. Additionally, the severity of the LCA's terms create a genuine issue of fact as to whether Defendants offered Plaintiff the LCA with the intention of forcing her to quit. Finally, plaintiff quit by voluntarily retiring. Plaintiff has established the factors for constructive discharge and meets the third *prima facie* element.

(Op. & Order at 12-13, ECF No. 112.) Further, while not explicitly stated in the Court's Opinion and Order, the LCA may also constitute circumstantial evidence of retaliation for the same reasons articulated under the Court's analysis of her discrimination claims. (*See id.* at 11-13, 17 (indicating that third element of a *prima facie* case of retaliation and sex and sexual orientation discrimination requires evidence of an adverse employment action, which Plaintiff met by relying on the LCA).) Thus, not only is the LCA integral to Plaintiff's claims, it is also probative evidence of discrimination and retaliation. Accordingly, the Court **DENIES** Defendant's Motion in Limine No. 6.

The Court, much like Defendant, recognizes that the LCA cannot provide a basis for *direct* evidence of discrimination or retaliation. In light of this observation, the Court acknowledges that a limiting instruction concerning permissible uses of the LCA may be appropriate in this matter.

**7. Defendant's Motion in Limine No. 7 to exclude any argument or statement for a mixed motive argument.**

Defendant's seventh motion in limine asks the Court to preclude Plaintiff from presenting any argument pertaining to a mixed-motive theory of recovery. (ECF No. 136 at 6-7.) Defendant

moves for this exclusion by asserting that Plaintiff has waived any mixed-motive argument. First, Defendant notes that, on summary judgment, Plaintiff did not respond to its argument of mixed motive. (*Id.* at 6.) By failing to respond, Defendant contends that the Court may consider Plaintiff's mixed-motive theory waived. (*Id.*) Second, Defendant highlights that Plaintiff's position during discovery and in her briefs was that Defendant lacked any legitimate reason for her constructive discharge, and therefore Defendant cannot now pursue a mixed-motive claim. (*Id.* (explaining that "a mixed motive case requires a plaintiff to admit there was a legitimate reason for her adverse employment action, and because Plaintiff has not done so, this is not a mixed motive case. *Wheeler v. City of Columbus*, 2019 U.S. Dist. LEXIS 133518, at *21 (S.D. Ohio Aug. 8. 2019) (Marbley, J.)".)

Plaintiff opposes Defendant's motion in limine on three grounds: (1) Plaintiff did *not* fail to respond to Defendant's arguments on her mixed-motive theory; (2) Defendant's motion in limine is procedurally improper because Defendant is using the motion as a vehicle to relitigate matters that should have been decided on summary judgment; and (3) Plaintiff has the right to take alternative claims to trial, including single- and mixed-motive claims. (ECF No. 140 at 8-10.)

The Court agrees with Plaintiff. At the outset, the Court notes that Plaintiff pleaded both single-motive and mixed-motive theories in her Amended Complaint. (*See* Am. Compl. ¶¶ 61, 68, 75, ECF No. 13 (alleging in Count I-III that Defendant constructively discharged her "because of" her sex or sexual orientation, and, "[a]lternatively," that her sex or sexual orientation was "a motivating factor" in her constructive discharge).)

Next, Defendant may be correct that Plaintiff's response to Defendant's summary judgment motion did not *specifically* address Defendant's mixed-motive arguments. But to say that Plaintiff's response, as a whole, failed to address Defendant's mixed-motive arguments

13

ignores the meritorious arguments she raised under her single-motive theory—arguments which necessarily encompass her mixed-motive theory. *See Bazzi v. YP Adver. & Publ'g, LLC*, No. 15-10741, 2016 U.S. Dist. LEXIS 114401, at \*17–28 (E.D. Mich. Aug. 26, 2016) (declining to address plaintiff's mixed-motive claims, explaining that by carrying her burden on her single-motive claims, plaintiff "has therefore also met her burden on her 'easier to prove' mixed-motive claims"). As the Court held in its Opinion and Order on summary judgment, Plaintiff carried her burden on her more-difficult-to-prove single-motive theory under Title VII; in doing so, Plaintiff necessarily met her burden on her "easier to prove" mixed-motive theory.[2] *See id.* Additionally, many of the cases upon which Plaintiff relied in her response on summary judgment involved mixed motive theories of recovery, which further supports Plaintiff's position that she has not abandoned this alternative theory of recovery.[3]

Finally, the Court notes that the Sixth Circuit, in general, disfavors the use of a motion in limine to dispose of a portion of a claim. *See Zitzow v. Auto-Owners Ins. Co.*, 2023 U.S. App. LEXIS 3832, at \*25 (6th Cir. Feb. 16, 2023) (unpublished) ("The use of motions in limine to summarily dismiss a portion of a claim has been condemned, and the trial courts are cautioned not to allow motions in limine to be used as unwritten and unnoticed motions for summary judgment or motions to dismiss.") (quoting 75 Am. Jur. 2d Trial § 42 (2009)); *see also Porter v. AAR Aircraft Servs., Inc.*, 790 Fed. App'x. 708, 713 (6th Cir. 2019) ("[We] generally condemn the use of a

---

[2] To survive summary judgment on a mixed-motive claim, a plaintiff need only present "sufficient evidence for a reasonable jury to conclude, by a preponderance of the evidence, that . . . sex . . . was a motivating factor for the defendant's adverse employment decision." *Griffin v. Finkbeiner*, 689 F.3d 584, 595 (6th Cir. 2012) (quoting *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 400 (6th Cir. 2008)). The Sixth Circuit has characterized plaintiff's burden on mixed-motive claims as "not onerous." *Lopez v. Am. Family Ins. Co.*, 618 Fed. Appx. 794, 800 (6th Cir. 2015) (quoting *White* 533 F.3d at 400).

[3] *See* Pl.'s Opp'n to Summ. J., ECF No. 106 (citing, *inter alia*, *Ondricko v. MGM Grand Detroit, LLC*, 689 F.3d 642, 649–52 (6th Cir. 2012); *Bobo v. UPS*, 665 F.3d 741, 756–57 (6th Cir. 2012); *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 402–06 (6th Cir. 2008); *Wexler v. White's Fine Furniture*, 317 F.3d 564, 572 (6th Cir. 2003)).

motion in limine to litigate or relitigate matters that should be resolved via a motion to dismiss or a summary judgment motion."). Here, the Court denied Defendant's summary judgment motion, holding that Plaintiff carried her burden on her Title VII claims under a single-motive theory. The Court declined to address Defendant's arguments related to Plaintiff's mixed-motive theory of recovery, as doing so was unnecessary in light of the Court's analysis of Plaintiff's single-motive arguments. Thus, the Court will not consider Defendant's motion in limine; to hold otherwise would effectively dismiss an entire theory of recovery upon which Plaintiff has based her claims. (*See* Am. Compl. ¶¶ 61, 68, 75, ECF No. 13.) Accordingly, the Court **DENIES** Defendant's Motion in Limine No. 7.

The Court also briefly notes that it is premature to cast this case as either a single-motive or a mixed-motive case. The Court has already held that Plaintiff may proceed to trial on her single-motive theory. And, regardless of whether she ultimately pursues a single- or mixed-motive theory of recovery (or both), the parties' strategies will likely be the same: Defendant will emphasize the legitimate reasons for its actions and Plaintiff will stress the discriminatory ones. *See Griffin*, 689 F.3d at 594 n.7 ("We note that single-motive and mixed-motive theories are not distinct claims, but rather different ways of analyzing the same claim."). Thus, the Court will wait to hear the evidence at trial before deciding the propriety of issuing jury instructions on either theory (or both). *Costa v. Desert Palace*, 299 F.3d 838, 856 (6th Cir. 2002) ("After hearing both parties' evidence, the district court must decide what legal conclusions the evidence could reasonably support and instruct the jury accordingly.").

**8. Defendant's Motion in Limine No. 8 to exclude any argument, claim or evidence for punitive damages against Defendant.**

Defendant's eighth motion in limine asks the Court to exclude any argument, claim or evidence relating to punitive damages, as Title VII does not provide for a claim of punitive

damages against government entities like Defendant. (ECF No. 136 at 7-8 (citing 42 U.S.C. § 1981a(b)(1)).) Plaintiff does not oppose this motion in limine, agreeing that "Title VII does not permit punitive damages against an agency of the State of Ohio . . . ." (ECF No. 140 at 1.) Accordingly, the Court **GRANTS** Defendant's Motion in Limine No. 8.

**9. Defendant's Motion in Limine No. 9 to exclude any references to Defendant's financial resources or the financial resources of the Ohio Department of Public Safety or the State of Ohio.**

Defendant's ninth motion in limine requests an order precluding Plaintiff from introducing any evidence regarding the size, financial condition, or resources of Defendant, the Ohio Department of Public Safety, or the State of Ohio. (ECF No. 136 at 8-9.) Plaintiff does not oppose this motion in limine, recognizing that "the state's financial resources are irrelevant[.]" (ECF No. 140 at 1.) As such, the Court **GRANTS** Defendant's Motion in Limine No. 9.

**10. Defendant's Motion in Limine No. 10 to exclude any argument to "send a message" or act as the "conscience of the community."**

Defendant's next motion in limine seeks exclusion of any reference or argument during trial by Plaintiff's counsel or Plaintiff that the jurors should "send a message" to Defendant, the Ohio Department of Public Safety, or the State of Ohio or to act as the "conscience of the community." (ECF No. 136 at 9-10.) Plaintiff does not oppose this motion in limine, and her counsel represents that they will not engage in such arguments at trial. (ECF No. 140 at 1.) In light of the parties' agreement on this issue, the Court **GRANTS** Defendant's Motion in Limine No. 10.

**11. Defendant's Motion in Limine No. 11 to exclude any arguments for front pay.**

Defendant's next motion in limine asks the Court to preclude Plaintiff from seeking an award for front pay. (ECF No. 136 at 10.) Defendant contends that Plaintiff should be precluded

from a front pay award because Defendant offered Plaintiff a chance to return to employment as a

Trooper. (*Id.*) Given this return offer, Defendant argues that:

> the Court should retain the issue to evaluate for reinstatement if the jury finds in
> favor of Plaintiff on one of her claims. To allow Plaintiff to submit a significantly
> higher claim for damages to the jury increases the possibility for confusion and
> unfair prejudice.

(*Id.*)

Plaintiff opposes Defendant's motion on two grounds: (1) Defendant's return offer falls

short of reinstatement because the position offered was inferior to Plaintiff's prior position; and

(2) front pay is appropriate where reinstatement is not feasible, as is the case here because

Defendant filled Plaintiff's vacant position with an innocent third party and Defendant's workplace

remained hostile to Plaintiff. (ECF No. 140 at 10-11.)

To start, front pay is an equitable remedy, and it "is simply money awarded for lost

compensation during the period between judgment and reinstatement or in lieu of reinstatement."

*Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843, 846, 121 S. Ct. 1946, 150 L. Ed. 2d 62

(2001) (Title VII). Reinstatement, rather than front pay, "is the presumptively favored equitable

remedy." *Roush v. KFC Nat'l Management Co.*, 10 F.3d 392, 398 (6th Cir. 1993) (citation

omitted). But reinstatement "is not appropriate in every case, such as where the plaintiff has found

other work, where reinstatement would require displacement of a non-culpable employee, or where

hostility would result." *Id.* (citation omitted).

With regard to an award of front pay, the Court makes "the initial determination of the

propriety" of such an award. *Arban v. West Publ'g Corp.*, 345 F.3d 390, 406 (6th Cir. 2003)

(internal quotations and citation omitted); *see also Roush*, 10 F.3d at 398–99 (holding that the

"determination of whether an award of front pay is appropriate, and its articulation of the reasons

why such an award is or is not appropriate, must ordinarily precede its submission of the case to

the jury."). "Generally, in awarding front pay, the following factors are relevant: (1) the employee's future in the position from which she was terminated; (2) her work and life expectancy; (3) her obligation to mitigate her damages; (4) the availability of comparable employment opportunities and the time reasonably required to find substitute employment; (5) the discount tables to determine the present value of future damages; and (6) other factors that are pertinent in prospective damage awards." *Suggs v. ServiceMaster Educ. Food Management*, 72 F.3d 1228, 1234 (6th Cir. 1996) (internal quotations and citation omitted).

Here, the record before the Court suggests that Plaintiff may have sufficient evidence to submit the issue of front pay to the jury. Plaintiff may, or may not, establish that reinstatement is inappropriate or infeasible given (a) the likelihood that the workplace would be hostile toward Plaintiff and (b) that reinstatement may necessitate removing a non-culpable employee. The record also suggests that Plaintiff may be able to provide evidence speaking to the factors outlined in *Suggs*. As such, the Court finds that the prudent course of action is to permit argument on the issue of front pay at trial. Following the presentation of the evidence, but before submitting the case to the jury, the Court will determine whether it is appropriate to instruct the jury on the issue of front pay. Accordingly, the Court **DENIES** Defendant's Motion in Limine No. 11.

**12. Defendant's Motion in Limine No. 12 to exclude any Golden Rule Arguments.**

Defendant's final motion in limine seeks exclusion of any reference or argument violating the "Golden Rule" prohibition—that is, Defendant requests an order precluding Plaintiff's counsel from arguing that the jury should "put themselves in the shoes of the plaintiffs and do unto them as they would have done unto them under similar circumstances." (ECF No. 136 at 10-12 (quoting *Loose v. Offshore Navigation, Inc.*, 670 F.2d 493, 496 (5th Cir. 1982).) Plaintiff does not oppose

this motion in limine, and her counsel represents that they will not engage in such argument at trial. (ECF No. 140 at 1.) As such, the Court **GRANTS** Defendant's Motion in Limine No. 12.

### III. PLAINTIFF'S MOTIONS IN LIMINE

1. **Plaintiff's Motion in Limine No. 1 to exclude any argument that the position offered to Plaintiff as part of her LCA can offset her economic damages.**

Plaintiff's first motion in limine asserts that Defendant cannot introduce evidence or argument that Plaintiff failed to mitigate her damages by declining her LCA, which led to her constructive discharge. (ECF No. 132.) Plaintiff contends that her refusal to accept a demotion to Trooper is irrelevant to Defendant's failure-to-mitigate affirmative defense because such an affirmative defense requires Defendant to prove that the Trooper position offered was "substantially equivalent" to Plaintiff's Training Sergeant position, which it was not. (*Id.* at 1-3.)

In response, Defendant contends that it may properly introduce evidence pertaining to Plaintiff's refusal to accept that LCA in arguing that Plaintiff failed to mitigate her damages because the jury should be able to consider whether a reasonable person would have accepted the LCA. (ECF No. 143 at 3.) Defendant appears to suggest that, despite the demotion to Trooper, the LCA presented a "substantially equivalent" employment opportunity because (1) Plaintiff would be able to continue her career with Defendant, (2) she would work with the same benefits and pension system, (3) her work was similar, and (4) the compensation was similar. (*Id.*)

The Court begins its analysis by turning to 42 U.S.C. § 2000e-5(g)(1). Under this provision, damages are reduced for "interim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against." *Id.* In other words, a defendant may reduce the amount of compensation to which a plaintiff is entitled if the plaintiff failed to mitigate her damages following the defendant's discriminatory conduct. If a plaintiff establishes discrimination and introduces evidence on the issue of damages, "the burden of producing sufficient evidence to

19

establish the amount of interim earnings or lack of diligence shifts to the defendant." *Rasimas v. Mich. Dep't of Mental Health*, 714 F.2d 614, 623 (6th Cir. 1983). A defendant carries this burden by establishing that "1) there were *substantially equivalent* positions which were available; and 2) the claimant failed to use reasonable care and diligence in seeking such positions." *Id.* at 624 (emphasis added). A "substantially equivalent" position is one that has "virtually identical promotional opportunities, compensation, job responsibilities, working conditions, and status" as the position from which the plaintiff was unlawfully terminated. *Id.*; *see also Ford v. Nicks*, 866 F.2d 865, 873 (6th Cir. 1989) (noting that a plaintiff's duty to mitigate does not require her to seek employment substantially equivalent to any previously held positions; rather, the plaintiff is only under a duty to seek substantially equivalent employment to the position from which she was discriminatorily fired).

At issue here is whether the Trooper position presented in the LCA was "substantially equivalent" to the Training Sergeant position from which Plaintiff alleges she was constructively discharged; it was not. The plain language of the LCA explicitly provides that Plaintiff "will be demoted to the rank of Trooper and transferred to the Fremont Post and will not be permitted to enter a transfer to Criminal Patrol for the duration of the [three-year] agreement." (LCA, Linek Dep. Ex. 6, ECF No. 86-1.) Moreover, the Court has already recognized that acceptance of the LCA would have resulted in a demotion in Plaintiff's rank, a reduction to her salary, a change to her job responsibilities, and she would be supervised by less experienced personnel. (*See* Op. & Order at 5, 12-13 ECF No. 112 ("The LCA was a three-year agreement that demoted Plaintiff to Trooper, reduced her salary and job responsibilities, and required her to remove her tattoo.").) In light of this record, the LCA unambiguously did *not* present plaintiff with "virtually identical promotional opportunities, compensation, job responsibilities, working conditions, and status,"

and therefore the offered position (Trooper) is not "substantially equivalent" to the position Plaintiff left (Training Sergeant). *See Rasimas*, 714 F.2d at 623.

Based on the above caselaw and the facts presented in this case, the Court finds that the position Defendant offered in the LCA is not "substantially equivalent" to the Training Sergeant position. As such, any argument that Plaintiff's damages should be reduced by her failure to accept the LCA is irrelevant, and therefore inadmissible under Federal Rule of Evidence 401. Fed. R. Evid. 401. Accordingly, Defendant may not use Plaintiff's decision to decline the LCA as evidence of her failure to mitigate her damages; the Court **GRANTS** Plaintiff's Motion in Limine 1.[4]

**2. Plaintiff's Motion in Limine No. 2 to exclude any evidence or argument on the previously dismissed claims.**

Plaintiff's second motion in limine asks the Court to exclude any evidence or argument indicating that (a) Plaintiff's lawsuit originally alleged claims against certain individual defendants, and (b) the Court dismissed these claims prior to trial. (ECF No. 133 at 1.) In moving for the exclusion of this evidence, Plaintiff's argue that these dismissed claims are irrelevant and their disclosure could lead the jury to reach improper conclusions about the claims being tried. (*Id.* at 2.)

Defendant does not oppose this motion, as it largely mirrors its first motion in limine. *See supra* Section II.1; *see also* Def.'s Resp. to Pl.'s Mot. in Limine No. 2 at 1, ECF No. 141. In light of the uncontested nature surrounding this motion, the Court **GRANTS** Plaintiff's Motion in Limine No. 2.

**3. Plaintiff's Motion in Limine No. 3 to exclude any evidence or argument on the EEOC's no probable cause recommendation.**

---

[4] This ruling does not limit Defendant's ability to introduce evidence pertaining to the LCA as it relates to Plaintiff's argument that she was constructively discharged.

Plaintiff's third motion in limine requests an order excluding any evidence or argument relating to the Equal Employment Opportunity Commission's ("EEOC") no probable cause recommendation on Plaintiff's discrimination charge. (ECF No. 134 at 1.) Plaintiff contends that such evidence is irrelevant and prejudicial. (*Id.*) Plaintiff does, however, clarify that she requests a limited order from the Court, as she still must be able to discuss the charge itself because the filing of the charge constitutes the protected activity giving rise to her retaliation claim. (*Id.* at 2.)

Defendant does not oppose Plaintiff's motion. (ECF No. 142 at 1.) Indeed, Defendant represents that it "does not intend to introduce evidence or question witnesses on a determination made by the EEOC . . . ." (*Id.*) Moreover, EEOC determinations "are 'widely considered to be presumptively inadmissible . . . ." *Tenkotte v. City of Cincinnati*, No. 1:05-cv-000218, 2006 U.S. Dist. LEXIS 79766, at *4–5 (S.D. Ohio Nov. 1, 2006) (quoting Williams v. Nashville Network, 132 F.3d 1123, 1129 (6th Cir. 1997)). Against this backdrop, the Court **GRANTS** Plaintiff's Motion in Limine No. 3.

The Court briefly notes that certain documents from Plaintiff's EEOC file may be introduced at trial notwithstanding this Order. To the extent that a party does intend to introduce such documentation, any references to any EEOC recommendations or findings related to Plaintiff's charge of discrimination must be redacted.

4. **Plaintiff's Motion in Limine No. 4 to exclude portions of Dr. Thomas Ireland's expert reports and portions of his testimony.**

Plaintiff's final motion in limine seeks to exclude from trial three categories of criticism issued by Defendant's economic rebuttal expert, Dr. Thomas Ireland:

(a) that Dr. Smith allegedly used "personal injury terminology" instead of "wrongful termination terminology" in his expert report; (b) that Dr. Smith only reduced Plaintiff's back pay by compensation Plaintiff earned at new jobs she actually obtained rather than reducing it by a higher level of compensation she allegedly could have obtained through a reasonable effort to mitigate; and (c) that

Dr. Smith should not have calculated Plaintiff's front pay to age 83.3 but instead only to age 62.6.

(ECF No. 137 at 2.)

As an initial matter, the Court notes that written reports of expert witnesses prepared in anticipation of trial are generally inadmissible hearsay. *Engebretsen v. Fairchild Aircraft Corp.*, 21 F.3d 721, 729 (6th Cir. 1994) (citing Fed. R. Evid. 702 and 703). Of course, a party may enter an expert report's contents through the expert's testimony. *See Hood v. Bare*, No. 2:17-cv-471, 2022 U.S. Dist. LEXIS 68877, at *11–12 (S.D. Ohio Apr. 14, 2022) (excluding expert's written report as "inadmissible hearsay" but noting that plaintiff may introduce the content of the expert's report via the expert's testimony). Here, Dr. Ireland's reports contain out-of-court statements that are inadmissible to the extent they are offered to show the truth of their contents, unless an exception to hearsay applies. Fed. R. Evid. 801, 802, 803. Defendant may enter the report's contents through Dr. Ireland's testimony, subject to the restrictions outlined below, but may not enter the reports themselves into evidence absent an admissible basis under Rule 803.

The Court now turns to the three categories of Dr. Ireland's proposed testimony that Plaintiff seeks to exclude, which the Court will address in turn.

### a. Dr. Ireland's critique of Dr. Smith's alleged use of personal injury terminology instead of wrongful termination terminology.

Plaintiff first argues that the Court should exclude any criticism from Dr. Ireland concerning Dr. Smith's use of "personal injury terminology" rather than wrongful termination terminology in his expert report. (ECF No. 137 at 3-4.) As a basis for this request, Plaintiff asserts that Dr. Ireland's criticism is irrelevant, unfairly prejudicial, and is unhelpful to the jury. (*Id.* at 3-4.) Defendant's response does not address this portion of Plaintiff's motion in limine. (*See* ECF No. 144.)

The Court agrees with Plaintiff. "It is the responsibility of the court, not testifying witnesses, to define legal terms." *Berry v. City of Detroit*, 25 F.3d 1342, 1353 (6th Cir. 1994). The proposed testimony at issue here, however, would turn this relationship on its head. For example, Dr. Ireland's reports complain that Dr. Smith used the term "date of injury" rather than "date of termination." (*See* Ex. 1 to Pl.'s Mot. in Limine No. 4 at 3, ECF No. 137-1 (noting that "[t]he term 'terminated' should have been used instead of injured in the sentence on page 2 of Dr. Smith's report.").) The reports also criticize Dr. Smith for referring to back pay and front pay as "Net Loss of Wages & Benefits." (*Id.* at 1 ("His report is written as if it was intended for a personal injury case, not for a wrongful termination case. Earnings loss in a wrongful termination case is normally framed in terms of Back Pay and Front Pay, rather than 'Net Loss of Wages & Benefits.'").) Regardless of whether Dr. Ireland's critiques have any merit, the Court finds that such proposed testimony is unhelpful, prejudicial (as it comes from a purported expert), and impermissibly invades the province of the Court to define legal terms. *See Berry*, 25 F.3d at 1353. To that end, the Court prohibits Dr. Ireland from testifying on the proper legal terminology for a wrongful termination case.

### b. Dr. Ireland's critique of Dr. Smith's calculation of Plaintiff's back pay.

Plaintiff also takes issue with Dr. Ireland's criticism of the methodology Dr. Smith used to calculate Plaintiff's back pay. (ECF No. 137 at 4-5.) For context, Dr. Smith calculated Plaintiff's back pay by first calculating the amount of earnings that Plaintiff would have earned from Defendant from the date of the alleged constructive discharge to the date of trial and then subtracting this amount by her earnings from her subsequent employers. (*Id.* at 3.) Plaintiff argues, however, that Dr. Ireland improperly criticizes Dr. Smith for failing to offset Plaintiff's back pay calculation with hypothetical jobs that Plaintiff allegedly could have obtained through reasonable

diligence. (*Id.* at 4 (citing Ex. 1 to Pl.'s Mot. in Limine No. 4 at 2, ECF No. 137-1 (concluding that "[n]o evidence is provided in Dr. Smith's report that she could not have eventually earned as much as in her Ohio Highway Patrol position," and that "Dr. Smith has not described efforts that Ms. Yerkes has made to find alternative employment other than to note specific jobs she has had since her termination").) Put differently, Plaintiff takes issue with Dr. Ireland's complaint that Dr. Smith should have factored *Defendant's* failure-to-mitigate affirmative defense into his back pay calculation.

In response, Defendant contends that an order in limine is inappropriate as "Dr. Ireland will likely only testify as to assumptions and methodologies to rebut the testimony of Plaintiff's expert." (ECF No. 144 at 2.)

The Court finds that Dr. Ireland's proposed testimony falls short of satisfying Federal Rule of Evidence 702. Rule 702 provides in pertinent part:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> > (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> [* * *]

Fed. R. Evid. 702. That is to say, Rule 702 requires that the proposed expert testimony assist the trier of fact. *See Pride v. BIC Corp.*, 218 F.3d 566, 578 (6th Cir. 2000) (noting that the party seeking to introduce expert testimony must show that the expert "will testify to scientific knowledge that will assist the trier of fact in understanding and disposing of issues relevant to the case").

Here, the proposed testimony that Plaintiff challenges is essentially legal argument couched as an expert opinion. As discussed in Section III.1, the failure-to-mitigate affirmative

25

defense requires *Defendant*—not Plaintiff or Plaintiff's expert—to prove two elements: (1) that a "substantially equivalent" job was available and (2) that Plaintiff failed to use reasonable diligence in trying to obtain it. *See Rasimas*, 714 F.2d at 624. Dr. Ireland's criticism, however, flips this established burden of proof by insinuating that Plaintiff's expert has an obligation to assume that Defendant has a meritorious failure-to-mitigate defense. Such criticism is unhelpful to the trier of fact on multiple grounds. First, this criticism is legal argument that is better suited to presentation by Defendant's counsel. And second, Dr. Ireland's criticism is likely to confuse the jury regarding the burden of proof for Defendant's affirmative defense. As such, the Court finds this portion of Dr. Ireland's proposed testimony inadmissible expert testimony under Rule 702. Accordingly, the Court prohibits Dr. Ireland from testifying that Plaintiff's damages should be offset by a hypothetical job that he believes she should have obtained through reasonable effort.

The Court notes that Dr. Ireland may testify on the same matters, but he must do so in conformity this Opinion and Order.

### c. Dr. Ireland's critique regarding Dr. Smith's calculation of Plaintiff's front pay.

Lastly, Plaintiff seeks to exclude Dr. Ireland's proposed testimony concerning the extent to which Dr. Smith calculated Plaintiff's front pay. (ECF No. 137 at 6.) Specifically, Plaintiff takes issue with Dr. Ireland's opinion that Dr. Smith should have calculated Plaintiff's front pay only to age 62.6, whereas Dr. Smith provided front pay calculations up to age 83. (*Id.*) Additionally, Plaintiff asks the Court to preclude Dr. Ireland from testifying to the jury that they should not consider any front pay beyond 62.6 years because that is Plaintiff's "work life expectancy." (*Id.*) Defendant opposes this portion of Plaintiff's motion in limine. (ECF No. 144 at 2.)

The Court finds that Plaintiff has failed to carry her burden to show that this proposed testimony is clearly inadmissible. *See Ind. Ins. Co.*, 326 F. Supp. 2d at 846. Although Plaintiff

26

argues, without any citation, that "work life expectancy" is beyond the scope of expert economist testimony, Plaintiff does not genuinely call into question Dr. Ireland's credentials. (ECF No. 137 at 6.) And the Court, having undertaken its own review of Dr. Ireland's reports and supporting materials, finds little to undermine his qualifications. The Court therefore finds it premature to limit Dr. Ireland's proposed testimony at this stage of the proceedings. *See Ind. Ins. Co.,* 326 F. Supp. 2d at 846 (explaining that "evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context").

Moreover, to the extent Dr. Ireland does render an opinion concerning Plaintiff's work-life expectancy, the Court does not preclude Plaintiff from introducing her own admissible evidence, including her own testimony, indicating a work-life expectancy greater than the age identified in Dr. Ireland's reports. Assuming the issue of front pay reaches the jury, it will be their responsibility to weigh the conflicting evidence and determine the proper amount of an award. *See Arban*, 345 F.3d at 406 (noting that "the determination of the precise amount of an award of front pay is a jury question"). Juries are well-equipped to handle this task. Accordingly, the Court denies this portion of Plaintiff's motion.[5]

In sum, the Court **GRANTS in part** and **DENIES in part** Plaintiff's Motion in Limine No. 4. First, Defense counsel may not introduce Dr. Ireland's reports as exhibits absent an admissible basis under Rule 803, though Defendant may enter the content of these reports through Dr. Ireland's testimony. Second, Dr. Ireland is prohibited from testifying on the proper legal

---

[5] In responding to Plaintiff's Motion in Limine No. 4, Defendant asks the Court to take judicial notice of Ohio Rev. Code § 5505.16(C), which, according to Defendant, imposes a mandatory retirement age of 60 years for Defendant's employees. (ECF No. 144 at 2.) Due to this mandatory retirement age, Defendant argues, the Court should strike any testimony from Plaintiff's expert concerning front pay calculations beyond 60 years. (*Id.*) The Court, however, does not find Defendant's single-sentence request, buried in its response to Plaintiff's motion in limine, sufficient to warrant the relief it seeks, at least at this stage of the proceedings.

terminology for a wrongful termination case. Third, Dr. Ireland may not testify that Plaintiff's

damages should be offset by a hypothetical job that he believes she should have obtained through

reasonable effort. Fourth, Dr. Ireland is not precluded from testifying as to Plaintiff's work-life

expectancy.

### IV. CONCLUSION

For the foregoing reasons, in accordance with this Opinion and Order:

- Defendant's omnibus Motion in Limine (ECF No. 136) is **GRANTED in part** and **DENIED in part**, as described herein;

- Plaintiff's Motion in Limine No. 1 to exclude any argument that the position offered to Plaintiff as part of her LCA can offset her economic damages (ECF No. 132) is **GRANTED**;

- Plaintiff's Motion in Limine No. 2 to preclude evidence or argument on the previously dismissed claims (ECF No. 133) is **GRANTED**;

- Plaintiff's Motion in Limine No. 3 to preclude evidence or argument on the EEOC's recommendation (ECF No. 134) is **GRANTED**; and

- Plaintiff's Motion in Limine No. 4 to exclude portions of Dr. Ireland's expert reports and testimony (ECF No. 137) is **GRANTED in part** and **DENIED in part**, as described herein.

**IT IS SO ORDERED.**

**7/20/2023**                                    **s/Edmund A. Sargus, Jr.**
**DATE**                                         **EDMUND A. SARGUS, JR.**
                                                 **UNITED STATES DISTRICT JUDGE**