**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **STACEY ARNOLD YERKES,** | : | |
| Plaintiff, | : | **CASE NO. 2:19-CV-2047** |
| v. | : | **JUDGE SARGUS** |
| **OHIO STATE HIGHWAY PATROL,** | : | |
| | : | |
| Defendant. | | |

**DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW, OR FOR A NEW TRIAL OR FOR REMITTITUR, AND REQUEST FOR SUPPLEMENTAL BRIEFING SCHEDULE**

Now comes Defendant Ohio State Highway Patrol ("Patrol"), by and through counsel, and moves the Court for judgment as a matter of law or alternatively, a new trial pursuant to Federal Rules of Civil Procedure 50 and 59. Although judgment as a matter of law is appropriate, at a minimum, the Patrol also moves for a remittitur of the damages awarded by the jury. The reasons set for this Motion are set forth in the attached Memorandum in Support.

In addition, defense counsel have requested transcripts of the trial proceedings, but those will not be available until around September 18, 2023. Therefore, defense counsel requests that the Court set a briefing schedule for these motions of: October 18, 2023 for supplemental briefs by defense counsel on the instant motions; November 20, 2023 for responses from Plaintiff's counsel, and December 4, 2023 for reply brief in support of the motions. Defense counsel have contacted Plaintiff's counsel and plaintiff's counsel has not objected to the additional briefing, but did want to wait to review the filings before agreeing to a specific timeframe for a memorandum contra.

Respectfully submitted,

DAVE YOST (0056290)
Ohio Attorney General

*/s/ Rory P. Callahan*

RORY P. CALLAHAN (0072021)
*Trial Counsel*
AMY RUTH ITA (0074520)
MEGAN JEWETT (0079534)
Assistant Attorneys General
Employment Law Section
30 East Broad Street, 16th Floor
Columbus, Ohio 43215
(614) 644-7257 - Telephone
(614) 752-4677 – Facsimile
ELSReview@OhioAGO.gov

*Counsel for Defendant*

I. **Introduction.**

The jury trial in this matter began on July 31, 2023, and concluded with the Court's entry of judgment on August 8, 2023. (Doc. # 176). Pursuant to the jury verdict, the Court ordered that Plaintiff had proven the Patrol was liable to her under both discrimination and retaliation theories of Title VII of the Civil Rights Act of 1964. A verdict for the Plaintiff was issued in the amount of $2,617,851.00. (Doc. # 176, PageID # 8463). This amount was delineated by the jury as $1,308,927.00 in compensatory damages, $624,109 in back pay, and $684,815 in front pay. (Doc. # 175, PageID # 8459-8462).

The entry of judgment should be vacated. The Court should issue a judgment as a matter of law in favor of the Patrol, based on the evidence at trial. Although judgment as a matter of law is appropriate, the Court also has discretion to order a new trial in this case, for the reasons discussed below. Finally, at a minimum, the Court should amend the judgment by remitting the verdict amount, because it exceeds the cap for compensatory damages set forth in 42 U.S.C. § 1981a(b)(3)(D), and because the jury verdict was speculative and excessive based on the evidence at trial.[1]

II. **Argument.**

    A. **The Court should enter judgment as a matter of law in favor of the Defendant.**

Federal Rule of Civil Procedure 50 states that "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally

---

[1] Defense counsel has ordered a copy of the transcript(s) of the trial for the purposes of these motions, however, the transcripts will not be ready until September 18, 2023. The proposed supplemental briefing after the transcripts are prepared will allow for full arguments in support of these motions, relative to the admitted testimony, exhibits and jury instructions at trial.

3

sufficient evidentiary basis to find for the party on that issue, the court may (A) resolve the issue against the party; and (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue." Fed. R. Civ. P. 50(a)(1). Thereafter, a party "may file a renewed motion for judgment as a matter of law" after the trial has concluded. Fed. R. Civ. P. 50(b). "[J]udgment as a matter of law is appropriate when viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue of material fact for the jury, and reasonable minds could come to but one conclusion, in favor of the moving party." *Mike's Train House, Inc. v. Lionel, LLC*, 472 F.3d 398, 405 (6th Cir. 2006) (internal quotation marks omitted); *see also* Fed. R. Civ. P. 50(b) advisory committee note to 1991 amendment ("In ruling on [a Rule 50(b)] motion, the court should disregard any jury determination for which there is no legally sufficient evidentiary basis enabling a reasonable jury to make it.").

At trial, Plaintiff's presentation of evidence on her discrimination and retaliation claims relied almost entirely on two grounds: (1) the hearsay testimony (by discovery deposition) of former Patrol employee Nathan Dickerson; and (2) other disciplinary incidents by employees of the Patrol that should not have been considered as comparators for the purposes of pretext analysis under either discrimination or retaliation theories for Title VII.

Plaintiff's counsel did not take the position that Dickerson was unavailable to testify until the morning of trial on July 31, 2023. Prior to that time, Plaintiff's counsel had requested that Dickerson testify by live videoconference. This is how Dickerson had testified at his discovery deposition. If Plaintiff's counsel were going to take the position that Dickerson was unavailable simply because he was in Hawaii, the Court's Order setting a trial date (Doc. #124) required that deposition testimony be identified by June 26, 2023. (Doc. #124). A witness's presence outside

4

the state, alone, is not a sufficient basis for an argument that the witness was unavailable. Dickerson's transcript was hearsay; Defense counsel did not have an opportunity to cross-examine the witness after discovery was developed in the case, and did not have an opportunity to cross-examine the witness on new arguments Plaintiff's counsel presented during questioning of witnesses at trial. Under Fed. R. Evid. 804(b)(1)(which should not even apply, since there was not a showing that the witness was unavailable other than being in Hawaii), the fact that Plaintiff's counsel made new arguments at trial, that Dickerson was either dishonest with his superiors about the fact that Plaintiff had a tattoo, or was insubordinate because he had insufficiently investigated whether Plaintiff had a tattoo, is a new argument about which Defense counsel could not question Dickerson. Plaintiff's counsel also then contended that Dickerson himself was a comparator, and Plaintiff's counsel argued that Dickerson was dishonest and insubordinate in failing to disclose or establish that Plaintiff had a tattoo.

  Moreover, Dickerson's testimony was the only source of a group of inappropriate and inflammatory profane comments that Plaintiff's counsel repeatedly relied upon to argue that there was an unlawful and discriminatory motive for the investigation of Plaintiff's admitted misconduct. At trial, Plaintiff did not dispute that she knew the tattoo was a violation of policy, and did not dispute that she was insubordinate when Captain Michael Kemmer questioned her about the sleeve and whether she had a tattoo on her forearm. There was no factual dispute about theses issues. Dickerson's transcript was essentially the only source of evidence for the profane comments and her claims of disparate treatment were made, and this was during a discovery deposition in April 2021, attributed to some of the supervisors in the chain of command.

None of these comments suggested an unlawful motive by any investigators or decision-makers in evaluating *the admitted misconduct of the Plaintiff.*

Second, Plaintiff's counsel relied repeatedly on alleged comparators that were not appropriate comparators under Title VII law. In *Noble v. Brinker Intl., Inc.,* 391 F.3d 715, 731–32 (6th Cir. 2004), the Sixth Circuit, in a Title VII case, overturned a jury verdict for Plaintiff because Plaintiff "failed to produce sufficient evidence to support an inference of intentional race discrimination." *Noble,* 392 F.3d at 731. In the *Noble* case, Plaintiff failed to put forth any comparators that were similarly situated to him. In *Yerkes,* Plaintiff did not have any comparators who had both gotten a permanent tattoo in violation of the Patrol's "Appearance Standards" policy, and were insubordinate when questioned about it. The Plaintiff in *Noble* also made only speculative arguments about whether any alleged discriminatory comments by a supervisor could be attributed to the decision-maker, a similar issue in *Yerkes* where no one in the Patrol's Office of Personnel, the Colonel's Office or the Director of Public Safety's Office were alleged to have made or even been aware of any alleged discriminatory comments.

In ordering a reversal and a remand, and entering judgment for the Defendant, the Sixth Circuit opinion noted,

> ""Although we are always hesitant to overturn a jury verdict," Gray, 263 F.3d at 602, we hold that the district court erred as a matter of law in denying [Defendant]'s motion for judgment as a matter of law. The evidence in the record is insufficient to permit a rational jury, even if it chose to disbelieve the defendant's proffered reason for discharging [Plaintiff], to conclude that the true reason for the discharge was racial discrimination. Accordingly, the judgment of the district court is **REVERSED**."

*Id.* at 732.

6

The Court's analysis in *Noble* is still the law of the Sixth Circuit. In *Hooker v. City of Toledo,* 644 Fed. Appx. 675, 678 (66th Cir. 2016), the Court affirmed a dismissal on the same analysis. The plaintiff must show "(1) that he was a member of a protected class and (2) that for the same or similar conduct he was treated differently than similarly-situated non-minority employees." *quoting Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992). To be similarly situated, the comparator "must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Id.* at 583. This has been clarified to mean that "the plaintiff and the employee with whom the plaintiff seeks to compare himself or herself must be similar[, that is, nearly identical,] in all of the relevant aspects." *Noble .,* 391 F.3d at 729 (alteration in original) (emphasis omitted) (internal quotation marks and citation omitted).

Moreover, in *Johnson v. Ohio Dep't of Pub. Safety*, 942 F.3d 329 (6th Cir. 2019), a case also against the Patrol, the Sixth Circuit specifically cautioned against considering comparators through a broad lens. In affirming summary judgment granted by Judge Marbley, the Sixth Circuit stated:

> When it comes to comparable seriousness, it is the particular conduct of the officers, not broad generalizations, that counts. Drawn at too high a level of generality, the "comparable seriousness" test becomes meaningless. True, stitches and open-heart surgery are both medical procedures. But that does not mean they are of "comparable seriousness."

*Id.* at 331. The Court then found that although the two troopers at issue in the case engaged in improper conduct toward motorists, the conduct was not similar enough to support an issue of fact on the plaintiff's race discrimination claim. In that case, the plaintiff's alleged comparator

7

allegedly attempted off-duty contact with two women he pulled over, but the plaintiff engaged in flirtation with two women while on duty. *Id.* at 330–32. The Sixth Circuit also noted that the troopers had different direct supervisors. *Id.* at 332. The Court therefore affirmed summary judgment to the Patrol because the plaintiff could not prove his prima facie case of race discrimination. *Id.*

Here, over the Patrol's objection, the Court admitted evidence of troopers and commercial enforcement officers—employees not in a supervisory, sergeant role like Plaintiff. (PX-13). None of the alleged comparators worked in the Criminal Patrol Unit, and none reported to Dickerson, Staff Lieutenant William Stidham, or Kemmer. Importantly, the misconduct by these employees also was not similar to Plaintiff; no other employee had violated the Patrol's appearance standards policy and engaged in insubordination to the same extent as Plaintiff. (*Id.*) Further, Plaintiff sought to compare her conduct throughout trial to misconduct committed by Dickerson and Stidham—both who were in ranks higher than Plaintiff and neither who engaged in conduct akin to Plaintiff. Stidham made derogatory comments about Dickerson to subordinates and received a one-day suspension. (PX-14). Dickerson failed to verify whether or not Yerkes had a tattoo on her forearm and received a written reprimand. (*Id.*) None of these employees are proper comparators who should have been submitted for jury consideration under Sixth Circuit authority outlined above.

Dickerson's discovery testimony was also support for her Title VII retaliation claim. Although Plaintiff's first protected activity was arguably on February 5, 2018, after she had already gotten the prohibited tattoo and been insubordinate, Dickerson had testified that he thought there was previous discussion.

8

Based on the timing of her protected activity, since she had already engaged in substantial misconduct, there is not evidence of causation to support her retaliation claim.

The same pretext analysis would apply on the retaliation claim, since no comparators engaged in the same or similar misconduct. Without the comparators, there simply is no evidence of pretext for retaliation.

### B. The Court has Discretion to Order a New Trial in this case.

Rule 59(a)(1) of the Federal Rules of Civil Procedure provides that "[t]he court may, on motion, grant a new trial on all or some of the issues ... [to] any party . . . (A) after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed.R.Civ.P. 59(a). A new trial is warranted when "the verdict is against the weight of the evidence, if the damages award is excessive, or if the trial was influenced by prejudice or bias, or otherwise unfair to the moving party." *Conte v. Gen. Housewares Corp.*, 215 F.3d 628, 637 (6th Cir. 2000).

As discussed above, the verdict in this case was against the weight of the evidence, since Plaintiff's case relied almost entirely upon the deposition transcript testimony of Nathan Dickerson, which defense counsel could not cross-examine, and the comparator evidence that should not have been presented to the jury as evidence of disparate treatment. Plaintiff's counsel relied on this testimony to question almost every witness during the trial. If the Court does not enter judgment for the Defendant, the fact that Plaintiff's most important witness failed to appear for trial, and she could not point to a single comparator under well-established law should be a basis for a new trial.

9

The cumulative weight of this inappropriate comparator evidence alone justifies a new trial. The Sixth Circuit has long held that evidence that an employee was disciplined more severely for two rules violations instead of one, that is not evidence of pretext. *See, e.g. Braithwaite v. Timken Co.,* 258 F.3d 488, 497 (6th Cir. 2001) (evidence that three other employees had received five day suspensions for violation of same rule as Plaintiff not evidence of pretext, since Plaintiff violated two rules). In this case, there was no employee who had engaged in the same misconduct as Plaintiff. Plaintiff's counsel continually harped on other forms of insubordination in cases that were not similar to the undisputed facts in Plaintiff's case. In addition, as discussed above, the Court admitted evidence of troopers and commercial enforcement officers—employees not in a supervisory, sergeant role like Plaintiff. None of the alleged comparators worked in the Criminal Patrol Unit, or the position of "extreme trust" that Plaintiff's own training partner described, and none reported to Dickerson, Staff Lieutenant William Stidham, or Kemmer. Importantly, the misconduct by these employees also was not similar to Plaintiff; no other employee had violated the Patrol's appearance standards policy and engaged in insubordination to the same extent as Plaintiff. (*Id.*)

Another reason supporting a new trial was the late disclosure of testimony from Plaintiff's expert. The testimony of Plaintiff's expert witness should have been barred based on the last minute disclosure of the Plaintiff expert's report, literally the night before a last minute scheduled video trial deposition. As argued in Defendant's Motion in Limine to exclude Plaintiff's expert witness testimony (Doc. #150, Filed July 20, 2023), absent a specific deadline in the Court's Scheduling Order (Doc. #124), Plaintiff's counsel should have provided any supplemental report and expert documents 30 days before trial. *See* Fed. R. Civ. P. 26(a)(3)(B). Plaintiff's counsel did not propose a date for the expert video testimony until Monday, July 10,

10

2023, when they proposed a date of Friday, July 14, 2023, and did not offer any other dates. (*See id.*). No supplemental production of reports or other materials required by Fed. R. Civ. P. 26(a) with regard to supplementation had been made at that time. On July 11, 2023, at 5:25 p.m., Plaintiff's counsel produced a new report from the economic expert, along with new work notes. (*See* Doc. #150). On July 13, 2023, at 5:11 p.m., Plaintiff's counsel produced another supplemental report from the expert, less than 24 hours prior to the requested time for the trial deposition. (*See id.,* with attachments). In this report, among other changes and additions (including a notation for the first time regarding the mandatory retirement age for participants in the Ohio State Highway Patrol retirement system), Dr. Smith asserts for the first time that Plaintiff has lost several years of future earning capacity because of depression. (*See id.,* with attachments). This late disclosure did not provide Defendant time to review this new and additional methodology, not previously identified by the expert, and Defendant is prejudiced by this late disclosure. Counsel for the Plaintiff and Defendant had an exchange on July 14, 2023, the morning of the expert deposition remote testimony, and could not resolve this dispute. (*See id.,* with attachments). Defense counsel noted these objections to the expert's testimony, and Plaintiff's counsel chose to go forward because Plaintiff's expert was traveling out of the country from July 15, 2023, through August 9, 2023. (*See id.,* with attachments). Given the timing, and the representation of Plaintiff's counsel that the expert was flying out of the country the next day (July 15) and would not return until August 9, defense counsel attended the deposition and, noting objections, conducted a brief examination, instead of refusing to attend at all.

Exclusion of the documents and the expert witness testimony was the appropriate remedy and allowing the testimony and exhibits to be presented to the jury justifies a new trial. Fed. R. Civ. P. 37(c)(1) states that "[i]f a party fails to provide information … as required by Rule 26(a)

11

or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).  Rule 37 requires "absolute compliance" with Rule 26(a).  *See R.C. Olmstead, Inc. v. CU Interface LLC,* 657 F. Supp. 2d 905, 909 (N.D. Ohio 2008).  The shifting methodology and explanations of Dr. Smith's opinions alone should justify this exclusion, but the late disclosure of Dr. Smith's other materials in support of his expert report only adds to the prejudice in this case.  Information on an expert's qualifications, including his publications and prior testimony, is essential for an opponent to prepare for cross-examination either at a deposition or trial.  *See Sowell v. United Container Mach., Inc.,* Case No. 02-2004-JWL, 2002 U.S. Dist. LEXIS 21471, at *5–6 (D. Kan. Nov. 1, 2002) (explaining that an expert's "publications, compensation, and prior testimony" is essential for an opponent to prepare an adequate defense); *Pineda v. City & County of San Francisco,* 280 F.R.D. 517, 521–22 (N.D. Cal. 2012) (list of plaintiff expert prior cases required to "properly prepare for an effective deposition or cross-examination" of the expert); *Elgas v. Colorado Belle Corp.,* 179 F.R.D. 296, 300 (D. Nev. 1998) (disclosure of expert's prior recorded testimony required because the information is "designed to give the other party access to useful information to meet the proposed expert's opinions").

This is quintessentially a case where the "update" or "supplemental" expert report and materials is "so late in the game" that it deprives the opposing party of a meaningful opportunity to respond or prepare for trial.  *See Williams v. City of Chattanooga,* 2018 U.S. Dist. LEXIS 247988, at *8 (E.D. Tenn. Feb. 1, 2018), *citing Capitol Justice LLC v. Wachovia Bank, N.A.,* 706 F.Supp. 2d 34, 38 (D.D.C. 2009).  The failure to exclude this testimony and the supporting materials justifies a new trial.  Here the failure to timely supplement the expert opinion and

related materials regarding Dr. Smith's preliminary report, and the untimely production of an "updated" report with shifting methodologies and late updated prior testimony, publications and compensation three days and less than 24 hours prior to the proposed video deposition trial of the expert put Defendant at a prejudicial disadvantage in preparing its case. The appropriate remedy was to strike completely the testimony of Plaintiff's economic expert witness. Allowing the jury to hear this evidence was prejudicial, and justifies a new trial.

Finally, during closing arguments, Plaintiff's counsel made inappropriate arguments to invite the jury to decide the case on emotion rather than evidence, citing to their own personal experiences and personal opinion during closing. Plaintiff's counsel related personal stories that were not part of the evidence of the case, and then invited the jury to rule for the Plaintiff instead of weighing the evidence, and send a message to Plaintiff's children by finding a verdict in her favor, and then asking for a damages award that was well beyond the statutory limits that could be requested based on the law and evidence in the case. This specifically violated the motion in limine that the Court had granted on this point (Doc. #151), advocated for the jury to make a decision based on sympathy and prejudice and not evidence, and justifies a new trial. "Golden Rule" arguments are universally recognized as improper. *United States v. Hall*, 979 F.3d 1107, 1119 (6th Cir. 2020). And, asking jurors to place themselves in the victim's shoes, violates the ban on Golden Rule arguments. *Id.* at 1119. Plaintiff's closing argument, that encouraged juror aidentification with the Plaintiff was also improper. *See, e.g., Johnson v. Bell*, 525 F.3d 466, 484 (6th Cir. 2008) (finding, "It could have been you. It could have been your children. It could have been any one of us," remarks to be improper closing argument). "Golden Rule" arguments tend to encourage the jury to make decisions based on personal interest and bias rather than on the evidence. *Hall*, 979 F.3d at 1119–20.

With respect to "send a message" arguments, the Sixth Circuit addressed similar circumstances in *Strickland v. Owens Corning*, 142 F.3d 353, 358 (6th Cir.1998). There, the plaintiff referred to the jury as "the voice of the community" and asked them to "tell" the defendants and "the world where you stand" and "your voice will be heard." *Id.* The *Strickland* court concluded that such arguments "can have no appeal other than to prejudice" and amount to an "'improper distraction from the jury's sworn duty to reach a fair, honest and just verdict." *Id.* at 359 (citations omitted).

The Court should set aside the verdict in this case and order a new trial. A Court has inherent authority to protect the orderly administration of justice and the dignity of the Court. *See Roadway Express, Inc. v. Piper,* 447 U.S. 752, 764 (1980). Pervasive misconduct of a party's counsel during a jury trial warrants the ordering of a new trial under Fed. R. Civ. P. 59 when there is a reasonable probability that the jury's verdict was influenced by counsel's misconduct. *See City of Cleveland v. Peter Kiewit Sons' Co.,* 624 F.2d 749 (6th Cir. 1980). Even when a Court goes to great lengths to attempt to deal with flagrant misconduct of counsel through warnings and cautionary instructions, a new trial may be warranted. *Id.* Misconduct that may warrant a new trial under Rule 59 includes a counsel's communicating contents of inadmissible documents to jurors, making extraneous remarks after receiving answers from witnesses, front-loading questions with information that witnesses would not have been allowed to testify about if proper questioning and methods of introducing evidence had been used, and disregarding orders of the Court, rules of evidence and rules of trial practice. *Park West Galleries, Inc. v. Global Fine Arts Registry, LLC,* 732 F. Supp. 2d 727, 749–51 (E.D. Mich. 2010).

### C. The Amount of the Verdict Awarded by the Jury Exceeds the Statutory Cap of Title VII and is speculative.

Even if the Court were to deny judgment for the defendant or deny a new trial, the amount of damages awarded must be reduced as a matter of law because the amount exceeds the statutory cap for compensatory damages allowed under 42 U.S.C. § 1981a(b)(3). 42 U.S.C. § 1981a(b)(3); *Waldo v. Consumers Energy Co.*, 2011 U.S. Dist. LEXIS 112398, at *15–20 (W.D. Mich. Sept. 30, 2011). Title VII includes a statutory cap of $300,000.00 for employers of the Patrol's size, and therefore the jury verdict of $1,308,927.00 in compensatory damages

At trial, the jury found in favor of Plaintiff on her claims of discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964. The jury verdict reflected a total award of judgment against the Patrol for $2,617,851.00. (Doc. 176, PageID 8463). This amount was delineated by the jury as $1,308,927.00 in compensatory damages, $624,109 in back pay, and $684,815 in front pay. (Doc. 175, PageID 8459-8462).

Title VII of the Civil Rights Act applies a limitation on the amount of damages that may be awarded in an unlawful intentional discrimination case. 42 U.S.C. § 1981a(b)(3)(D) states, "the sum of the amount of compensatory damages awarded under this section for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses, and the amount of punitive damages awarded under this section, shall not exceed, for each complaining party—in the case of a respondent who has more than 500 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $300,000."

The statutorily imposed cap on compensatory damages applies per plaintiff, not per claim. *Hudson v. Reno*, 130 F.3d 1193, 1199-1202 (6th Cir. 1997) (Overruled as to the statutory cap applying to front pay). As such, even if a jury awards more than the available cap in

15

compensatory damages, the Court must remit the jury award to the applicable statutory cap. See *EEOC v. New Breed Logistics*, 962 F. Supp. 2d 1001, 1023 (6th Cir. 2013).

In addition, the verdict should be reduced based on the speculative nature of a significant amount of the damages awarded. The Court should also significantly reduce the calculation of back pay and front pay based on the admitted speculation of Plaintiff's expert. During his testimony, he calculated back pay and front pay, assuming an additional $10,000.00 per year based on the speculation that Plaintiff would be promoted to Lieutenant. Plaintiff's expert conceded he had no basis to assume she would be promoted to Lieutenant, other than Plaintiff's self-interested statement telling him that herself. At the time of her retirement, she was not eligible to be promoted to Lieutenant. In addition, Plaintiff's expert calculated a 79% additional value for income based on employee benefits. This is an additional $17,900.00 per year for lost back pay and front pay. For 13 years of back pay and front pay, this comes to at least $232,700.00 reduction in the back pay and front pay awards that the Court can reduce to be consistent with the evidence. *Siewertsen v. Worthington Indus.*, 783 Fed. Appx. 563, 576 (6th Cir. 2019) (affirming a trial court's directed verdict on back pay damages because the plaintiff's "numbers were incorrect, inconsistent, and based on pure speculation. . . . His theory of damages therefore is that he would have received higher raises if he would have been allowed to remain in the shipping department, but Siewertsen admitted that raises at Worthington were dependent on employees' evaluations and other budgetary factors and thus were not predictable.")

Alternatively, the front pay award in the verdict should be denied. The Court's ruling that front pay was based only on the Plaintiff's own self-serving testimony that she would not return to work. She chose to move to Hawaii a year after she retired, and then moved to Michigan a year later. It is undisputed that when she retired with 24 years of service credit, she

was one year away from full benefits, and it is completely speculative that she would have continued to work for the Patrol until the age of 60, other than as a way to inflate the damages sought in this case. The Court has it within its discretion to completely remove the front pay award from the verdict.

### III. Conclusion

For the foregoing reasons, the Defendant respectfully requests that the Court enter judgment as a matter of law in favor of the Patrol. For many of the same reasons, if it does not grant judgment as a matter of law, it is within the Court's discretion to order a new trial. Finally, at a minimum, remittitur and a significant reduction of the jury award is appropriate and consistent with Title VII law.

Respectfully submitted,

DAVE YOST (0056290)
Ohio Attorney General

*/s/ Rory P. Callahan*

RORY P. CALLAHAN (0072021)
*Trial Counsel*
AMY RUTH ITA (0074520)
MEGAN JEWETT (0079534)
Assistant Attorneys General
Employment Law Section
30 East Broad Street, 16th Floor
Columbus, Ohio 43215
(614) 644-7257 - Telephone
(614) 752-4677 – Facsimile
ELSReview@OhioAGO.gov

*Counsel for Defendant*

17

## **CERTIFICATE OF SERVICE**

This will certify that the foregoing *Defendant's Motion for Judgment as a Matter of Law, or For A New Trial or For Remittitur, and Request for Supplemental Briefing Schedule* was filed electronically on September 5, 2023.  This filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

*/s/ Rory P. Callahan*

RORY P. CALLAHAN (0072021)
*Trial Counsel*
Assistant Attorney General